No. 100,454

STATE OF KANSAS, *Appellee*, v. DAVID E. EASTERLING, *Appellant*.

(213 P.3d 418)

Opinion filed August 7, 2009.

*Christopher M. Joseph*, of Joseph & Hollander P.A., of Topeka, argued the cause, and *Stephen M. Joseph*, of the same firm, of Wichita, was with him on the brief for the appellant.

*Matt P. Patterson*, assistant district attorney, argued the cause, and *Jamie L. Karasek*, assistant district attorney, *Robert D. Hecht*, district attorney, and *Steve Six*, attorney general, were on the brief for the appellee.

The opinion of the court was delivered by

JOHNSON, J.: As part of a plea agreement, David E. Easterling pled guilty to two counts of aggravated indecent liberties with a child under the age of 14. In exchange for his plea, the State agreed to recommend a durational departure from the hard 25 life sentence mandated by K.S.A. 21-4643 (Jessica's Law) to a term of 118 months in prison. At sentencing, the district court declined to follow the joint recommendation for departure and imposed the statutorily prescribed hard 25 life sentence. In pronouncing its decision, the sentencing court mentioned Easterling's post-*Miranda* admission that he had sexually molested his daughter in the 1980's, which the judge had discovered was recorded in the law enforcement officer's arrest report affidavit.

Easterling appeals his sentencing, alleging that (1) his right to due process was violated by the district court's reliance on the arrest report affidavit at sentencing, without affording Easterling the opportunity to challenge its contents or requiring that the State prove the contents by a preponderance of the evidence; and (2) the life sentence with a mandatory minimum of 25 years constitutes cruel or unusual punishment, in violation of § 9 of the Kansas Constitution Bill of Rights.

*FACTUAL OVERVIEW*

Easterling's 5-year-old granddaughter told her paternal grandmother that Easterling had been inappropriately touching her genitals. The grandmother reported the allegation to the Social and Rehabilitation Services (SRS) which led to a "safe talk" interview with the child. Officer Heather Stults-Lindsay then interviewed Easterling and reported that, after *Miranda* warnings had been given, Easterling admitted to touching his granddaughter inappropriately.

After plea negotiations, Easterling waived a preliminary hearing and pled guilty to an amended complaint containing the two counts of aggravated indecent liberties with a child. The day before the

scheduled sentencing hearing, the district court, *sua sponte*, convened a hearing to clarify certain matters.

First, the court was concerned that the amount of time scheduled for the sentencing hearing might be insufficient, if psychological testimony about the child was to be offered. In that respect, the State advised the court that it would stipulate that the victim was doing well. Further, the State agreed to the submission of additional letters in support of the defendant, including one from the therapist who had been treating Easterling.

Next, the court inquired about a discrepancy in the minute sheet about the charges to which Easterling had pled. The parties confirmed that the two counts were identical charges of aggravated indecent liberties with a child and that Easterling had entered a guilty plea to both counts.

The court then inquired as to how the allegations arose. Specifically, the court wanted to know the extent of SRS's involvement, which the State explained.

Finally, the court advised the parties that "there is the affidavit of the officer, which indicated that the defendant had admitted after *Miranda* apparently that he had an incident like this with his own daughter back in the 80's. That's in the police report." Easterling's counsel acknowledged that defendant had given up his right to challenge the affidavit by pleading guilty, but suggested that the court should not consider the statement because the allegation of prior abuse had not been proved. Before the parties left court that day, the district court made certain that Easterling's counsel had a copy of the affidavit, which states, in relevant part:

"State of Kansas: Shawnee County,

"I, Heather Stults-Lindsay of lawful age, after first being duly sworn on oath, on information and belief states:

"A Safe Talk was conducted with the five year old granddaughter of David Easterling. The five year old disclosed that her grandfather had been touching her vagina and buttocks with his hand and penis. The five year old described the white stuff that came out of grandpa's penis when his penis touched her vagina. In a post Miranda interview with Easterling he advised that when his granddaughter spent the summer with him in July and August 2006 during and after her baths he would fondle her vagina with his fingers. After her baths he would have her go to his bedroom and lay on his bed. He then licked her vagina on several

occassion [*sic*] and stated on one occasion rubbed his penis on her vagina. He also advised that the five year old touched his penis on one occasion in his bedroom. Easterling stated he could not remember if he ejaculated or not. Easterling also admitted to sexually molesting his own daughter when she was a child in the 1980's.

"In a conversation with Easterling's wife she advised she was aware of the sexual touching of her daughter as a child in Arkansas, but they did not report that to authorities. Easterling's wife stated she was unaware of the sexual acts with her grand daughter [*sic*].

"Easterling was transported to DOC and booked on on [*sic*] the seven counts listed on this report.

"I verify under penalty of perjury that the foregoing is true and correct.

"All of the events described herein occured [*sic*] within Shawnee County, Kansas. **FURTHER AFFAINT** [*sic*] **SAYETH NAUGHT.**"

The following day at sentencing, the district court provided a detailed explanation of the sentencing authority vested in the court by the legislature, including a discussion of Jessica's Law, K.S.A. 21-4643. The court advised Easterling that in order to exercise its departure authority and impose the jointly recommended sentence of 118 months, the court must review the proffered mitigating circumstances and determine whether the reasons to depart are both substantial and compelling.

The court noted that it had considered the six mitigating circumstances listed in K.S.A. 21-4643(d) and had not found substantial and compelling reasons to depart from that list. However, the court acknowledged that the statutory list is nonexclusive and, accordingly, the court specifically reviewed and briefly discussed each of the numerous mitigating circumstances propounded in Easterling's departure motion. The court observed that if it were to focus entirely on the circumstances relating to the defendant, *e.g.*, "defendant's community service, church, his work, his family, the statement by his daughter who also proffered that the victim is doing well, the defendant's lack of prior criminal record, the fact the State has joined in recommending the departure, obviously a strong and compelling argument can be made for reduced sentence."

However, the court opined that its inquiry had a second component in which it focused on the crimes themselves. Here, the

court noted, the defendant, an older man, performed multiple acts of lewd fondling with a very young child, who was particularly vulnerable. The child had been placed in his trust. He committed the acts to satisfy his sexual desires at the expense of a 5-year-old child. The court found that Easterling's acts were no different from the typical scenario presented for the crime of aggravated indecent liberties with a child under age 14, with the possible exception that "it may have been more intense than normal, if normal could even be defined."

The court then acknowledged that it had considered the Stults-Lindsay arrest report affidavit, because the court believed that it could "consider any other relevant evidence that the Court would find trustworthy and reliable." The court found the affidavit to be reliable and trustworthy because it had been "signed under oath under penalty of perjury by a law enforcement officer of legal age." The court opined that the acts Easterling performed in this case, together with the prior abuse of his daughter, indicated that "defendant possesses an abnormal condition in which an adult has a sexual desire for children."

In that vein, the court expressed concern that there had been no expert opinion as to how long the victim would remain in therapy and "what the long term effects might be because of the dysfunction of this family unit." Likewise, the court noted the absence of any assurance that "the defendant wouldn't re-offend under the right circumstance with a minor child in the future" and declared: "One of the purposes of the current law, Mr. Easterling, is Kansas's attempt to protect children from abuse by one whose only interest is to satisfy their sexual desires." The court then found:

"Therefore, after making an assessment of the defendant for the departure, after making an assessment of the nature of the crime and the defendant's involvement and the applicable Kansas law, the Court finds that while there have been at least nine or more reasons advanced for departure, the Court cannot and does not find from the totality of the circumstances that there are both substantial and compelling reasons to depart. The defendant's motion for durational departure is therefore denied."

Easterling appealed that ruling, and this court has jurisdiction, subject to K.S.A. 22-3601(b)(1).

## DUE PROCESS

Easterling asserts that the sentencing court violated his right to due process when it based his sentence, in part, on the information contained within the arrest report affidavit, without providing him a genuine opportunity to challenge the disputed factual assertions in the affidavit and without requiring the State to prove the disputed facts by a preponderance of the evidence. We are not presented with a challenge to the district court's assessment that the reasons given for departure were not substantial and compelling. Easterling clarified in his reply brief that he is "challenging the district court's denial of procedural due process, not its decision to deny a departure motion." Accordingly, our review is unlimited. See *State v. Kirkpatrick*, 286 Kan. 329, 351, 184 P.3d 247 (2008) ("Whether a defendant's due process rights were violated is a question of law over which this court exercises unlimited review.").

Although Easterling's brief does not specifically set forth which of the facts contained in the affidavit that he disputes, we discern his principal concern is with his admission to previously sexually molesting his own daughter. Moreover, Easterling's counsel's oral arguments did not focus on disputing that Easterling actually made the inculpatory statement to the law enforcement officer. Rather, counsel argued that the procedures employed did not ensure that the content of Easterling's statement was true and not a false or involuntary confession.

Easterling supports his arguments with federal authority, commencing with a citation to *Gardner v. Florida*, 430 U.S. 349, 358, 51 L. Ed. 2d 393, 97 S. Ct. 1197 (1977), for the proposition that a defendant is entitled to due process at sentencing. *Gardner* was a death penalty case in which the jury recommended a life sentence, but the trial judge sentenced the defendant to death, relying in part on confidential information in the presentence report which had not been disclosed to the defendant. In a plurality decision, six members of the Supreme Court voted to invalidate the death sentence, albeit for differing reasons. Four of the justices explicitly based their decision, at least in part, on the applicability of the Due Process Clause to sentencing proceedings.

We pause to note that the State's brief did not address the due process question. Instead, the State relied exclusively on an argument that this court lacked jurisdiction to entertain Easterling's appeal of the departure denial because he received a presumptive sentence. See K.S.A. 21-4721(c)(1) (appellate court shall not review any sentence that is within the presumptive sentence for the crime). At oral argument, the State acknowledged that its jurisdiction argument is undermined by our intervening opinion in *State v. Ortega-Cadelan*, 287 Kan. 157, 163-64, 194 P.3d 1195 (2008) (life sentence for off-grid crime does not meet K.S.A. 21-4703 definition of "presumptive sentence").

Although we are unaware of any Kansas case explicitly stating that a defendant is entitled to due process at sentencing, we have made that finding in the analogous context of probation revocation proceedings. "The Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation." *State v. Walker*, 260 Kan. 803, Syl. ¶ 2, 926 P.2d 218 (1996). Certainly, then, the potential for depriving a defendant of his or her liberty at sentencing would likewise mandate the applicability of due process limitations at that critical stage of the criminal proceedings. The question then becomes the extent of the process that is due a defendant at sentencing. *Cf. State v. Palmer*, 37 Kan. App. 2d 819, Syl. ¶ 4, 158 P.3d 363 (2007) ("Because probation revocation hearings are not equivalent to criminal prosecutions, they are allowed a more flexible process and consideration of material that might not be admissible in an adversary criminal trial."); see also *Gardner*, 430 U.S. at 358 n.9 (fact that due process applies does not implicate entire panoply of criminal trial procedural rights; due process is flexible, calling for such procedural protections as the particular situation demands).

At oral argument, Easterling declared that for sentencing purposes a defendant need only advise the court that he or she disputes a particular fact and due process precludes the court's consideration of that disputed fact unless the State presents evidence to prove the fact by a preponderance of the evidence. Further, Easterling asserted that if, as in this case, the State must refrain

from advocating for the existence of a disputed aggravating fact because of its commitments under a plea agreement, then the court simply cannot consider that fact. Easterling overstates his constitutional entitlement.

In his brief, Easterling relies principally on decisions from the Second Circuit Court of Appeals, to-wit: *Gonzalez v. Kuhlman*, 911 F. Supp. 120, 125-26 (S.D.N.Y. 1995) ("[W]hile, at sentencing, due process does not 'implicate the entire panoply of criminal trial procedural rights,' it requires some protection against a defendant being sentenced on the basis of 'materially untrue' statements or 'misinformation' and insists also that the state prove disputed conduct upon which a sentence rests 'by a preponderance of the evidence.' "); *United States v. Lee*, 818 F.2d 1052, 1055 (2d Cir. 1987) (due process violated when information on which defendant is sentenced is "materially untrue" or is, in fact, "misinformation"); *United States v. Pugliese*, 805 F.2d 1117, 1123-24 (2d Cir. 1986) (due process requires that defendant be allowed in some manner to challenge proffered presentence report information; court has obligation to assure itself that the information upon which it relies in sentencing defendant is both reliable and accurate). At oral argument, Easterling conceded that the factual context in which these cases considered due process at sentencing differed from the departure denial presented in this case.

*Gonzalez* involved a sentencing for a jury trial conviction of first-degree robbery. At the time of the robbery sentencing, Gonzalez was awaiting trial on a gun possession charge and faced a possible indictment for an alleged prison assault. The prosecutor, on his own and without any plea negotiations with defendant, advised the sentencing court that if it imposed an indeterminate sentence of 7 to 21 years, the prosecutor would drop the pending gun charge and would not pursue an indictment on the assault. Gonzalez opposed the proposal, indicating his desire to have a trial on the other charges and asserting that he was not guilty of those other offenses. The court announced that, based upon the facts of the current case, an appropriate sentence would have been 5 to 15 years. However, in light of the prosecutor's commitment not to go forward with the other charges, the court imposed a 7- to 21-year sentence. The

record did not reflect that the sentencing court had made any determination as to the factual accuracy of the prosecutor's representations or of the defense's denials regarding the assault and gun charges.

In reversing the sentence, *Gonzalez* first clarified that the fact the sentence imposed fell within the statutory maximum for the robbery conviction was not determinative of whether Gonzalez was deprived of his constitutionally protected right to due process at sentencing. On the other hand, the court also clarified that a defendant has no right to protest the dismissal of charges; that in fixing a sentence a court may consider other pending charges and uncharged but relevant conduct; and that traditionally a sentencing judge's discretion is largely unlimited either as to the kind of information that may be considered and the source from which it derives. However, those "principles are subject to the overall constraint that the procedure by which these factors come before the court conform to the requirements of due process." 911 F. Supp. at 125. In determining whether the procedures employed by the sentencing court conformed to minimal due process requirements, the district court applied the four factors enunciated in *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976):

"(1) the nature of the individual interest at stake, (2) the risk of error inherent in the present method of obtaining information, (3) the usefulness of additional procedural safeguards in securing accurate information, and (4) the government's interest in being free of the fiscal and administrative burdens that the provision of additional safeguards would impose." *Gonzalez*, 911 F. Supp. at 126.

The *Gonzalez* court opined that application of the analysis was straightforward in that case. The interest at stake—defendant's future liberty—could not be greater. Relying on unproven prosecutorial representations to obtain information presents an inherent risk of error, if not a temptation to make unfounded allegations of uncharged offenses or to initiate baseless prosecution simply to influence the sentence in the pending case. Requiring additional procedural safeguards is bound to result in an incremental benefit in improved accuracy of information to be considered by the sentencing court. Finally, while acknowledging the government's in-

terest in avoiding extended "mini-trials" after conviction to be significant and legitimate, the court opined that procedures could be fashioned to assure that the court relies only on accurate information in sentencing without imposing an excessive burden on the State. 911 F. Supp. at 126.

Ultimately, *Gonzalez* declared:

"Here there is no close question. Cutting through the competing characterizations of what took place, the defendant was sentenced to an additional term of imprisonment of two to six years (the difference between the five to fifteen year term otherwise thought appropriate and the seven to twenty-one years imposed) for offenses of which he was accused, but which he denied, without (i) any evident consideration by the sentencing court of the accuracy of those charges or (ii) any determination as to whether the People had established the petitioner's guilt even by a preponderance of the evidence. While the sentencing judge undeniably could have sentenced the petitioner to a term of seven to twenty-one years purely on the basis of the offense of conviction, without regard to the other charges, the reliance on the disputed conduct in the absence of these safeguards violated petitioner's federal constitutional right to due process of law." 911 F. Supp. at 126.

In *Lee*, the defendant was charged in one count of an indictment with violating the Racketeer Influenced and Corrupt Organizations Act (RICO) by committing five racketeering acts. He pled guilty to the charge but only admitted committing two of the alleged racketeering acts. One of the acts to which Lee did not admit was a double murder. The prosecution recommended a 40-year sentence, in part because of Lee's participation in the double murder, the details of which were submitted to the court in an extensive sentencing memorandum. The sentencing court concluded that Lee had participated in the double murder and acknowledged that this fact affected the court's decision to impose the maximum penalty. Lee contended on appeal that the sentencing court violated his due process rights by imposing a sentence predicated on the insufficiently proven finding that he participated in the double murder.

With respect to the process that Lee was due at his sentencing, the *Lee* court reiterated the four *Mathews v. Eldridge* factors. The court noted that a defendant's challenge to the accuracy of the government's proffered sentence-enhancing facts "may take the form of countering affidavits, letters, or other written submissions;

it may consist of the defendant and/or counsel, as in the instant case, directing argument and comment to the court; there may simply be a cross-examination of witnesses, or a full-blown evidentiary hearing." 818 F.2d at 1056. However, regardless of the form of defendant's challenge, the district court must ensure that the defendant has an effective opportunity to rebut allegations likely to affect the sentence. The court noted that Lee had declined the district court's offer of a full-blown evidentiary hearing, even though the court was under no duty to make that offer. Nevertheless, the court found that the sentencing court had afforded Lee a full opportunity through argument addressed to the court to rebut the government's allegations, *i.e.*, Lee had been afforded procedural due process. Moreover, the court found that the prosecution had presented sufficient evidence to prove by a preponderance of the evidence that Lee participated in the double murder. 818 F.2d at 1057-58.

Finally, in *Pugliese*, the defendants challenged their enhanced sentences for counterfeiting based upon allegations that they had sanctioned an attempt to murder a witness against them. Ultimately, the sentences were vacated because the district court had not comported with its obligations under Federal Rules of Criminal Procedure § 32. 805 F.2d at 1124. However, for our purposes, *Pugliese* found that the sentencing judge's use of a transcript of a sentencing proceeding before another judge that revealed that one of the defendants had threatened the witness did not deny the defendants' due process. Also, the opinion held that the defendants were not entitled to a full-blown hearing in their challenge to the presentence reports. 805 F.2d at 1122-23.

Here, the State was not the proponent of an enhanced sentence. To the contrary, the prosecutor had agreed to jointly recommend a sentence of 118 months, which was a *mitigated* sentence; the statutory default was the hard 25 life sentence that Easterling received. However, the State did not have the burden to prove the substantial and compelling reasons to depart from the default sentence. On the other hand, the prosecutor would not, and indeed could not, proceed to actively advocate in favor of a fact which might undermine the jointly recommended sentence, such as put-

ting on evidence to prove that Easterling had previously abused his own daughter. See *State v. Woodward*, 288 Kan. 297, Syl. ¶ 3, 202 P.3d 15 (2009) (State can breach plea agreement by effectively arguing against the negotiated sentencing recommendation).

Despite the factual distinctions, however, we are persuaded by Easterling's argument that, for due process purposes, the bottom line is the same. The parties agreed that the appropriate sentence under the circumstances was 118 months. The sentencing court agreed that, focusing on Easterling's circumstances, the argument for the appropriateness of the 118-month sentence was a strong one. However, the sentencing court rejected that 118-month sentence in favor of a hard 25 life sentence, based in part on the previous sexual abuse, *i.e.*, the court enhanced the sentence based on information about prior uncharged but relevant conduct. The rationale for precluding the use of "materially untrue" information or "misinformation," for requiring the sentencing court to assure itself that the information upon which it relies to fix sentence is reliable and accurate, and for requiring the sentencing court to ensure that the defendant have an effective opportunity to rebut the allegations likely to affect the sentence is fully applicable under these circumstances. See *Lee*, 818 F.2d at 1055-56.

Where we depart from Easterling's argument is his assertion that a sentencing court is precluded from considering a sentence-enhancing fact, where the State cannot advocate for the existence of the fact because of its contractual obligations under a plea agreement. Even the federal cases upon which Easterling relies make it abundantly clear that a sentencing court may consider any circumstance which aids it in deriving a more complete and true picture of the convicted defendant's background, history, or behavior, and that the use of such information, including other crimes for which the defendant was neither tried nor convicted, "does not in and of itself offend a defendant's due process rights." *Lee*, 818 F.2d at 1055. Likewise, the general statute governing departure sentencing specifically provides that "[i]n determining aggravating or mitigating circumstances, the court shall consider: . . . any other evidence relevant to such aggravating or mitigating circumstances that the court finds trustworthy and reliable." K.S.A. 21-4716(d)(4). Al-

though Easterling was sentenced under K.S.A. 21-4643, which contains its own departure provisions, no sound reason exists not to apply the general provisions in this context. We decline to constrain a sentencing court's considerable discretion by limiting the information it can consider to only that which is proffered by the parties.

Nevertheless, a sentencing court's largely unlimited discretion as to the kind or source of information it may consider at sentencing must be exercised "[w]ithin the frame of procedural due process." *Lee*, 818 F.2d at 1055. Therefore, if a sentencing court endeavors to enhance a sentence beyond that which is jointly recommended by the parties based on a fact which the defendant disputes and for which the prosecutor cannot advocate, the court must, *sua sponte*, assure itself that the information establishing the sentence-enhancing fact is reliable, accurate, and trustworthy and must provide the defendant with an effective opportunity to rebut the allegation.

In this case, the district court did take steps to safeguard Easterling's rights. It advised defense counsel in advance that the court was looking at the arrest report affidavit and made certain that counsel had a copy. The court made a determination on the record that the affidavit was reliable and trustworthy, at least with respect to accurately reflecting what Easterling and his wife said to the affiant officer. At the sentencing hearing, the court clarified that the defense would have an opportunity to be heard, specifically inviting the defense "to proceed with your argument and any evidence or additional evidence that you want to offer in the amended agreed motion for durational departure." We believe that, pursuant to the four *Mathews v. Eldridge* factors, the district court's actions afforded Easterling the minimum process to which he was due under the federal Constitution.

As with most, if not all, sentencing cases, the first factor—the nature of the individual interest at stake—favors the defendant; and the fourth factor—the government's interest in being free of the fiscal and administrative burdens that the provision of additional safeguards would impose—favors the State (or in this instance the court). The scales will be tipped by the second and third

factors: the risk of error inherent in the method used to obtain the information; and the usefulness of additional procedural safeguards in securing accurate information.

The risk of error in this case can be analyzed on two levels: the risk that the officer inaccurately reported the statements made by Easterling and his wife; or the risk that Easterling or his wife gave a false or coerced statement to the officer. The district court specifically addressed the first level, finding the affidavit to be reliable and trustworthy because the affiant/officer swore an oath that *her* statements were true and correct "under penalty of perjury." We agree. The inherent risk of error is significantly reduced when the information is obtained through a sworn affidavit. The whole point of using an affidavit is to ensure the accuracy and truthfulness of the affiant's statement.

Moreover, under the third factor, employing any procedure in addition to the affidavit would be marginally useful with respect to ensuring the *officer's* veracity. There is scant difference between an officer delivering a report under oath from the witness stand and delivering a report under oath in a written affidavit. Granted, Easterling suggests that his statement may not have been voluntary and, in that regard, the opportunity to cross-examine the officer would have been useful. However, while the voluntariness of the confession affects its admissibility at trial and might have a bearing on an assessment of whether the confessor was telling the truth, it does not change the reliability and trustworthiness of the officer's statement as to what Easterling actually said to the officer. Accordingly, the district court did not err in accepting the affidavit without further foundation from the officer.

Easterling concentrates on the second level, contending that the procedures employed did not adequately ensure that *his* statement was truthful. On appeal, he suggests that the officer's affidavit, without more, was insufficient to protect against the possibility that his confession was involuntarily given and/or was a false confession. In challenging the use of the affidavit in district court, defense counsel was less specific. The argument below was that the affidavit did not have "any place in this Court because it was never tested

and it is just an allegation and that's all it is." We disagree with both arguments.

A confession by the defendant differs from the unproven representations of the prosecutor, which *Gonzalez* found to have a high inherent risk of error under the second *Matthews v. Eldridge* factor. 911 F. Supp. at 126. The source of a prosecutor's information may be unknown or suspect. A confessor is relating firsthand information. A prosecutor normally has an incentive to relate the defendant's prior uncharged conduct to obtain a sentence enhancement. To the contrary, a confessor is making a declaration against his or her own interest. Even if the statute of limitations has run on the prior criminal acts, our hearsay exceptions recognize that a reasonable person will not say something that subjects the declarant to "hatred, ridicule or social disapproval in the community . . . unless the person believed it to be true." K.S.A. 2008 Supp. 60-460(j). One would be hard-pressed to divine a more socially stigmatizing declaration than a father admitting to sexually molesting his daughter.

Here, however, the officer's affidavit presented the district court with more than Easterling's confession. It included corroboration from his wife, who admitted to knowing about the prior sexual abuse of her own daughter and admitted that the conduct was not reported to the authorities. Again, such a declaration against interest is inherently trustworthy, given the risk of societal disapproval of the wife's failure to report her daughter's sexual abuse. To ignore the prior uncharged conduct, the district court would have had to find that both Easterling and his wife gave false confessions. Accordingly, under the second factor, we find that the risk of error inherent in using Easterling's corroborated confession was minimal.

Finally, Easterling asserts that the court's procedure did not give him a meaningful opportunity to rebut the prior abuse allegation. At oral argument, counsel admitted that the defense was aware of the arrest report affidavit at the time of plea negotiations. In fact, counsel advised that the defense had obtained an expert to testify about false confessions. Moreover, the district court put the defense on notice the day before sentencing that it had looked at and

was considering the affidavit which contained Easterling's confession of prior abuse. The defense had ample notice to comport with due process.

At the sentencing hearing, the court specifically invited the defense "to proceed with your argument and any evidence or additional evidence that you want to offer" in support of the departure motion. Easterling does not adequately explain why this invitation did not provide him with sufficient opportunity to rebut his own confession or that of his wife. He does not allege that he was unable to obtain the appearance of his false confession expert; he did not request a continuance of the sentencing hearing. Easterling's counsel did not even advise the court that Easterling and his wife would say that they made false confessions or that the daughter would deny that Easterling had molested her, much less present any readily available testimony or affidavits from any of the persons with first-hand knowledge. As was the case in *Lee*, the defense apparently declined to accept the district court's proffered opportunity to rebut the contents of the affidavit. That declination does not change the fact that the court provided a method by which the defendant could be effectively heard, thereby comporting with the mandates of the Due Process Clause.

## CONSTITUTIONALITY OF SENTENCE

Easterling contends that the length of his sentence is an unconstitutionally cruel or unusual punishment, in violation of § 9 of the Kansas Constitution Bill of Rights. Our standard of review is de novo. See *State v. Freeman*, 223 Kan. 362, 368, 574 P.2d 950 (1978).

Easterling did not challenge the constitutionality of his sentence before the district court. See *State v. Alger*, 282 Kan. 297, 304, 145 P.3d 12 (2006) (even constitutional grounds for reversal cannot be raised for the first time on appeal). Easterling declares, without argument, that consideration of the issue is necessary to prevent a denial of his constitutional rights. *Cf. State v. Shopteese*, 283 Kan. 331, 339, 153 P.3d 1208 (2007) (exceptions to general rule that new legal theory may not be asserted for first time on appeal in-

clude "consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights").

However, as the State points out, recent decisions of this court have refused to consider the merits of this very issue when raised for the first time on appeal. See *State v. Thomas*, 288 Kan. 157, 161, 199 P.3d 1265 (2009), and *State v. Ortega-Cadelan*, 287 Kan. 157, 160-61, 194 P.3d 1195 (2008). Those decisions were founded upon the nature of the three-prong test for determining cruel and unusual punishment set forth in *Freeman*:

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." 223 Kan. at 367.

We noted that the factors include both legal and factual questions, none of which could be ignored because "no single consideration controls the issue." *Thomas*, 288 Kan. at 161. Because the district court had not made any factual findings relative to the *Freeman* test, we declined to go beyond our role as an appellate court. See *Thomas*, 288 Kan. at 161 (appellate courts do not make factual findings; they review those made by the district courts).

Here, Easterling argues that we have sufficient facts in the record to analyze the first *Freeman* factor. However, he does not point to the district court's findings, but rather he simply reiterates some of the mitigating factors he proffered in his departure motion. Nevertheless, we acknowledge that the district court's detailed recitation in ruling on the departure motion does provide us with more in the way of factual findings than we have previously seen. However, those findings cut against, rather than support Easterling's position. The court found that Easterling's culpability "may have been more intense than normal." It found that Easterling acted to satisfy his own sexual gratification without regard to the victim's

vulnerability or the position of trust Easterling held over the child. Accordingly, the court expressed concern that Easterling might "re-offend under the right circumstance with a minor child in the future" and noted that one of the purposes of the lengthy sentence was "to protect children from abuse by one whose only interest is to satisfy [his] sexual desires." In other words, given the factual findings which are actually in the record, we are unable to find that the first *Freeman* factor establishes a cruel or unusual sentence.

Moreover, Easterling does not favor us with any argument or authority on the third factor, a comparison of how other jurisdictions punish this offense. As noted, the analysis requires consideration of all three *Freeman* factors. Accordingly, the issue is not before us in a posture to be effectively decided.

Affirmed.