(244 P.3d 680)
No. 102,724

STATE OF KANSAS, *Appellee*, v. WILLIAM DILLON, *Appellant*.

Summarily reversed and remanded to Court of Appeals by Supreme Court on March 18, 2011

Opinion filed December 3, 2010.

*Ryan Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Chadwick J. Taylor*, district attorney, *Natalie Chalmers*, assistant district attorney, and *Steve Six*, attorney general, for appellee.

Before STANDRIDGE, P.J., MARQUARDT and LEBEN, JJ.

LEBEN, J.: More than 10 years ago, William Dillon was convicted of attempted aggravated indecent solicitation of a child. Beginning in 2003, he was required to register as a sex offender under the Kansas Offender Registration Act. That law requires offenders to periodically report to the sheriff in their county of residence. It originally required the offender to report once during his birth month and then every 6 months thereafter; the legislature amended the law in 2006 to require more frequent reporting—in the offender's birth month and every 4 months thereafter—starting July 1, 2007. K.S.A. 2006 Supp. 22-4904(d); K.S.A. 2006 Supp. 22-4904(c). Failing to report as directed is a felony. K.S.A. 22-4903(a).

Dillon ran afoul of the enhanced reporting requirements in 2008. He reported in Shawnee County in February 2008, his birth

month. Under the new statute, he was therefore required to report again by June 30, 2008. He did not meet this requirement.

Dillon ultimately pled no contest to the failure to report charge. He requested a downward durational departure (*i.e.*, a shorter prison sentence) or a downward dispositional departure (*i.e.*, probation instead of prison) and argued that the presumptive sentence—a minimum of 114 months—was disproportionate to the crime's severity. Dillon claimed that he didn't know about the new, more frequent reporting obligations. He explained that he left Shawnee County and moved to Lawrence, which is in Douglas County. Dillon said that he forwarded his Shawnee County mail to his new Lawrence address but that he didn't receive any letters from the Shawnee County Sheriff's Office. He also insisted that he tried to register in Douglas County twice, but that the Douglas County Sheriff's Office found his paperwork unacceptable and refused to accept it.

The State argued that Dillon signed a form in February 2008 acknowledging the new reporting timeline and that it also mailed a notice of the new requirements to him at his last given Topeka address. The notice came back as undeliverable because Dillon no longer lived at the address; a sheriff visited the house and confirmed that Dillon did not live there anymore. The State also maintained that his probation officer and various Shawnee County sheriff's deputies also told him of the new requirements.

The district court denied Dillon's request for a shorter sentence, ordering that he be imprisoned for 114 months, the minimum presumptive guideline sentence. Dillon appealed.

I. *We Have Jurisdiction to Consider this Appeal of a Presumptive Sentence Because the District Court Explicitly Refused to Consider the Proffered Basis of a Motion for a Departure Sentence Where that Proffered Basis Was Legally Relevant.*

We first must determine whether we have jurisdiction to consider Dillon's appeal. Normally, a presumptive sentence is not subject to appeal, and the State suggests we are without jurisdiction. See K.S.A. 21-4721(c)(1); *State v. Graham*, 27 Kan. App. 2d 603, 609, 6 P.3d 928, *rev. denied* 269 Kan. 936 (2000). A presumptive

sentence is one of those provided in the grid block in our sentencing guidelines as classified by the defendant's criminal history score and the severity level of the offense. K.S.A. 21-4703(q). The district court here gave Dillon a presumptive sentence.

To consider whether there may be any exception to this rule precluding the appeal of a presumptive sentence, we first must set out Dillon's basic argument. He contended in the district court that he should receive a sentence that was substantially shorter than the guideline sentence—known as a downward durational departure sentence—or a dispositional departure to probation because the guideline sentence was disproportionately severe given the facts of his offense and his criminal history.

Dillon contends on appeal that the district court explicitly refused to consider the proportionality of his individual sentence. Accordingly, we face three questions in determining whether we have jurisdiction to consider the appeal. First, did the district court consider the individual proportionality argument Dillon made in his departure motion? Second, if not, did the district court's failure to consider Dillon's individual proportionality argument deny him due process at sentencing? Third, if we answer yes to the first two questions, does the district court's violation of Dillon's due-process rights at sentencing provide an exception to the general rule that we have no jurisdiction to consider the appeal of a presumptive sentence? Because we find that the answer to all three questions is yes, we conclude that we have jurisdiction to consider the merits of Dillon's appeal.

*The District Court Did Not Consider Proportionality Based on the Facts of Dillon's Case*

Let's start with the primary basis for Dillon's departure motion. The defendant argued that the court should grant a departure because the guideline sentence was "disproportionate to the offense charged" against him. The defendant asked the court "to consider the disproportionate sentence *and use that disproportionality as a substantial and compelling reason to* depart." (Emphasis added.) At sentencing, the defendant's lawyer argued that "the most important factor [favoring a departure sentence] . . . is the dispro-

portionate time for the type of crime . . . he's committed." Both the attorney and the defendant emphasized at the sentencing hearing that Dillon had complied with the registration requirements until the requirements changed in July 2007.

The defendant did *not* make a different proportionality claim that is sometimes made—that the presumptive sentence was unconstitutionally disproportionate and therefore a violation of the Eighth Amendment's ban on cruel and unusual punishment. That claim was not made in Dillon's departure motion or in oral argument at sentencing. That's not surprising because other than a finding that a life sentence without parole eligibility for a recidivist worthless-check writer violated the Eighth Amendment, *Solem v. Helm*, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983), "it has been difficult for the challenger to establish a lack of proportionality." *Graham v. Florida*, 560 U.S. 48, 59, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010); see *Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (upholding life without parole sentence for possession of large quantity of cocaine).

But the district court apparently thought that the defendant was making the *constitutional* proportionality argument rather than using proportionality as the basis for his departure motion. The district court limited its consideration of proportionality to that constitutional argument, rather than considering it as a challenge to the proportionality of the sentence *in Dillon's circumstances*:

"Now, the defendant has also argued his sentence is disproportionate to the conduct of the underlying offense. The Court considers that to be a question solely of law in these circumstances. I don't find any factual matters before the Court that attach to that argument [so] that the Court must find and will consider it as an issue of law."

The court then proceeded to say that it was "not a court of equity," so its consideration was limited to whether the presumptive sentence was *unconstitutionally* disproportionate:

"A Court must determine whether the law is disproportionate in its sentencing punishment, and that has constitutional dimensions. I cannot make that finding. I do not find that the law is disproportionate. There's no constitutional defect."

From our review of the record, the court never considered the proportionality argument that was actually made by the defendant

in support of his departure motion. Both the attorney and the defendant then emphasized that Dillon had complied with the registration requirements until the requirements changed in July 2007. The prosecutor, in response, noted his understanding that the defendant was arguing that "the degree of harm . . . to the community or the seriousness of the offense does not merit the length of the sentence." But by treating the defendant's argument as a constitutional one—rather than a basis for finding a substantial and compelling reason to depart, as argued by the defendant—the district court made no consideration of whether the facts of Dillon's case made the sentence disproportionate.

*The District Court Violated Dillon's Due-Process Rights by Refusing to Consider Individual Proportionality Where It Was the Basis of a Departure Motion and Legally Relevant.*

Dillon's departure motion was based on his claim for individual proportionality, *i.e.*, that the presumptive sentence was disproportionate given the circumstances of his case. Where individual proportionality is the basis of the departure motion and is a relevant sentencing consideration, the refusal even to consider it would violate Dillon's due-process rights.

To place Dillon's motion in context, we consider it in light of the sentencing guidelines adopted in Kansas. The legislature has provided sentencing guidelines to ensure that similarly situated defendants receive similar sentences. Presumptive sentences are the primary means used to achieve that goal. See *State v. Haney*, 34 Kan. App. 2d 232, 238, 116 P.3d 747, *rev. denied* 280 Kan. 987 (2005). The presumptive sentence is the legislature's determination of what sentence is proportionate to a crime's severity level and the offender's criminal-history score. K.S.A. 2009 Supp. 21-4704(d); *Haney*, 34 Kan. App. 2d at 238. But the legislature also recognized that individual circumstances may cause the presumptive sentence to be too harsh or too lenient in a given case, so sentencing judges may depart from the presumptive sentence. K.S.A. 21-4716(a). Departures are permitted when the sentencing judge finds substantial and compelling reasons to do so. K.S.A. 21-4716(a); *State v. Blackmon*, 285 Kan. 719, 724, 176 P.3d 160 (2008)

(substantial means real and compelling means that the facts of the case force the court to abandon the status quo and venture beyond the ordinary sentence).

In determining whether there are substantial and compelling reasons for a departure sentence, the legislature has provided a nonexclusive list of factors that may call for a greater or lesser sentence. K.S.A. 21-4716(c). The listed factors do not explicitly mention proportionality, but the legislature made it a nonexclusive list. The listed factors include facts like the victim's age or infirmity; whether the victim was the initial aggressor; whether the offender played an active or passive role in the crime; and the defendant's mental capacity during the crime's commission. K.S.A. 21-4716(c). The list of factors notably compares the harm that the defendant caused in the case to the harm typically caused by the offense. If the harm is less than normal, it's a factor in favor of a lesser sentence; if the harm is greater than normal, it's a factor in favor of a greater sentence. K.S.A. 21-4716(c)(1)(E), (c)(2)(B).

A sentencing judge's analysis of whether substantial and compelling reasons exist to depart inherently involves some analysis of whether the presumptive sentence is still a proportional one given the potential reasons for departure. If substantial and compelling reasons to depart do not exist, then the sentencing judge has found that the legislature's declaration of what sentence is proportional— the presumptive sentence—is still valid for the specific facts of the individual defendant and his or her case. Indeed, when a sentencing judge gives a departure sentence, the law still provides that the judge must consider the purposes of the guidelines and requires that the judge "impose a sentence which is proportionate to the [crime's] severity . . . and the offender's criminal history." K.S.A. 21-4719(b)(1).

In Dillon's case, the proportionality argument was the primary basis for his departure motion. We conclude, then, that the sentencing judge in Dillon's case was required to consider the proportionality of the sentence to the severity of the crime and Dillon's criminal history.

So what is the effect when, as here, the judge explicitly refuses to do so? A convicted defendant has a constitutional right to at

least a minimum level of due process at sentencing. *State v. Easterling*, 289 Kan. 470, Syl. ¶¶ 1-2, 213 P.3d 418 (2009). Surely due process at least requires that a district judge not exclude from consideration something that the law requires the judge to consider when it has been raised by the defendant as the basis for a departure sentence. We therefore have jurisdiction to consider Dillon's claim that the district court erred by refusing to consider individual proportionality at sentencing.

*An Appellate Court Has Jurisdiction to Determine Whether a Sentencing Court Has Violated the Defendant's Due-Process Rights.*

When the district court's sentencing procedures violate the constitution, the sentence is not considered a presumptive sentence. See *State v. Johnson*, 286 Kan. 824, 841-42, 190 P.3d 207 (2008). We have located no case in which a defendant was denied due process at sentencing, yet our appellate courts have dismissed an appeal for lack of jurisdiction on the ground that it was a presumptive sentence. As our Supreme Court noted in *Johnson*, it has given careful consideration to constitutionality attacks on presumptive sentences in several cases. The court has considered the constitutional issue in the context of determining whether it had jurisdiction to hear the appeal, and in each case where the court determined that there was no constitutional violation, it found it lacked jurisdiction to hear the appeal of a presumptive sentence. Dillon presents a viable claim that the sentencing court did not provide him due process when it excluded from consideration his proportionality argument. We therefore have jurisdiction to consider it.

We note that the situations in which we will be able to consider an appeal like Dillon's will be infrequent; the rule we apply here is no loophole that would open the floodgates for the appeal of presumptive sentences. The district court is not required to make explicit findings when it denies a departure motion. *State v. Koehn*, 266 Kan. 10, 15, 966 P.2d 63 (1998). Thus, in most cases, the district court will not have said it *excluded* consideration of individual proportionality, and we generally presume (in the absence

of a clear showing otherwise) that a district court made the findings necessary for its ruling. But when the district court explicitly excludes consideration of a required sentencing factor or explicitly applies an incorrect legal standard in sentencing, we will have jurisdiction to consider that type of appeal. Otherwise, the defendant's right to due process at sentencing would be meaningless.

As an alternative basis for our jurisdictional ruling, we note that our court has previously recognized that a presumptive sentence may be appealed when the district judge has expressly misstated the applicable law. Thus, in *State v. Cisneros*, 42 Kan. App. 2d 376, 380-81, 212 P.3d 246 (2009), where the district court wrongly stated that it lacked authority to grant a reduced sentence when revoking the defendant's probation, we reversed and remanded to reconsider the matter under the correct legal standard. Essentially the same thing has occurred here. By treating the disproportionality claim solely as a constitutional challenge, the district court incorrectly concluded that it lacked authority to consider disproportionality on the facts of this case. We can consider a defendant's appellate claim that a presumptive sentence has been issued under an incorrect understanding of the legal standards that guide a judge's discretion in sentencing.

II.  *The District Court Erred by Excluding Relevant Factors from Its Consideration of the Motion for a Departure Sentence.*

We turn then to the merits of Dillon's claim that the district court wrongly excluded from its consideration the proportionality of the sentence in Dillon's own case.

We acknowledge that the district court did address some factual aspects of Dillon's departure motion. The court concluded that Dillon had presented two separate arguments: (1) "some factual matters which the defendant argues constitute substantial and compelling reasons for departure" and (2) that "his sentence is disproportionate to the conduct of the underlying offense," which the court said was a pure issue of law with no "factual matters before the Court." The court did conclude that the "factual matters" that were before it were not by themselves sufficient to grant a downward departure, but the court considered these factors in

isolation from his proportionality argument. But by cabining the factual matters on one side and proportionality on the other, the court failed to give any individualized consideration to the defendant's argument that the disproportionality of his sentence—on the specific facts of his case—was a substantial and compelling reason to depart. By doing so, the court denied Dillon due process by refusing to consider individualized proportionality, a matter squarely before the court on Dillon's departure motion.

III. *No Other Issues on Appeal Require Reversal.*

Dillon makes two additional arguments on appeal that he did not raise before the district court. First, he argues that the sentence violated the Eighth Amendment's prohibition on cruel and unusual punishment. The State rightly notes that he did not raise that issue below. With limited exceptions, this argument may not be raised for the first time on appeal. See *State v. Gomez*, 290 Kan. 858, 862, 235 P.3d 1203 (2010). That rule might not apply here since the district court did address the issue, even though Dillon had not raised it. But we are remanding the case for resentencing, and an appellate court generally avoids making unnecessary constitutional decisions. See *Wilson v. Sebelius*, 276 Kan. 87, 72 P.3d 553 (2003). We therefore decline to address the Eighth Amendment question at this time. Second, Dillon argues he was not actually required to register based on an argument that the statutory provisions relied upon to trigger his reporting requirement violate a rule against the stacking of inchoate offenses. The State again correctly notes that Dillon did not raise this issue below. Once again, with limited exceptions, this argument may not be raised for the first time on appeal. See *State v. Shopteese*, 283 Kan. 331, 339, 153 P.3d 1208 (2007). Dillon has not argued that any of the exceptions apply, and we decline to consider this issue because Dillon has waived it by failing to argue for any of the exceptions. See *State v. Mitchell*, 284 Kan. 374, 377, 162 P.3d 18 (2007).

## CONCLUSION

In sum, whether to grant a departure motion is a discretionary call for the district court, see *State v. Robison*, 290 Kan. 51, 55,

222 P.3d 500 (2010), but due process requires that the district court not exclude relevant factors from its consideration. Because the district court appears to have done so in Dillon's case, we vacate the sentence and remand for resentencing. Because resentencing is required, we note that it appears that Dillon's criminal history score was mistakenly calculated for sentencing purposes. See *State v. Pottoroff*, 32 Kan. App. 2d 1161, Syl. ¶ 4, 96 P.3d 280 (2004) (conviction that created need for registration cannot be counted in determining criminal-history score when sentencing a defendant for failure to register).

\* \* \*

MARQUARDT, J., concurring and dissenting: I concur with the majority's decision to decline to address Dillon's Eighth Amendment issue as well as his argument that his reporting requirement violated a rule against stacking of inchoate offenses. I respectfully dissent from the majority holding that Dillon's sentence should be vacated and the case remanded for resentencing.

William Dillon's notice of direct appeal on May 22, 2009, states that he "appeals from all judgments and the sentence imposed."

On April 4, 2000, William Dillon was convicted of attempted aggravated indecent solicitation of a child which required him to register as a sex offender pursuant to the Kansas Offender Registration Act (KORA). K.S.A. 22-4901.

In July 2003, Dillon filed his first offender registration form with the Shawnee County Sheriff's Office indicating his primary residence was 1001 NE Highway 24 #7, Topeka, KS 66608. When he reported in February 2008, Dillon signed an acknowledgment form indicating he understood that as of July 1, 2007, any person who is required to register shall report in person to the sheriff's office in the county which the person resides three times each year, once during the month of the person's birthday and every 4 months thereafter. K.S.A. 22-4904(c). He still had the same Topeka address on that date.

In June 2008, Dillon failed to report to the Shawnee County Sheriff's Office. The State charged Dillon with one count of failing to register as an offender as required by K.S.A. 22-4904(c), or in

the alternative, one count of failing to report his change of address to the sheriff's department and the Kansas Bureau of Investigation within 10 days of his move under K.S.A. 22-4904(b). The sheriff's office sent Dillon a certified letter at his Topeka address advising him to complete the required update. The letter was returned with the notation "Not at this address."

An arrest warrant for Dillon was filed November 24, 2008, for failure to register and failure to inform the Kansas Bureau of Investigation of his new address as required under the Kansas Offender Registration Act.

From June 2008, until his arrest for violation of registration requirement in November 2008, Dillon claims that various probation officers, attorneys, and judges knew his whereabouts. He was in Saline County jail during that time. At Dillon's pretrial hearing on February 6, 2009, Dillon was also on probation in Shawnee County case 07-CR-832 for violating a protective order and endangering a child.

On March 9, 2009, Dillon pled no contest to the first level 5 felony charge of failing to register as an offender. The State dismissed the second level 5 felony of failing to report a change of address. The district court informed Dillon of all the rights he was giving up by entering his plea, and Dillon said he understood. The court also advised Dillon that the court would use the Kansas Sentencing Guidelines to determine an appropriate sentence and that because he was pleading to a level 5 felony "the sentencing range would be a minimum of 31 months to a high of 136 months, depending upon your criminal history." Dillon was also advised that the court "would use the accurate criminal history" for his sentencing. Dillon acknowledged that he understood.

Prior to sentencing, Dillon filed a motion for a downward dispositional and durational departure claiming that his sentence under the Kansas Sentencing Guidelines Act (KSGA) was disproportionate to the offense charged. In support of his motion, his counsel claimed at the sentencing hearing that "a lot of these offenses and crimes that he has been convicted of are over ten years old."

At Dillon's sentencing hearing on May 22, 2009, his presentence investigation report showed that he had a criminal history score of

B with a severity level 5 felony offense. Dillon voiced no objection to the presentence investigation report. Dillon's sentence under the KSGA mandated a presumptive prison term of 128/120/114 months. The district court stated:

"The defendant has filed a motion for departure. The Court has considered that motion, make arguments in two respects. First, there's some factual matters which the defendant argues constitute substantial and compelling reason for departure. The defendant has the burden on this to persuade the Court that he has met the standard of a substantial and compelling reason for departure. He has argued that he was somewhat unaware of the requirements and made some failures in that regard. I don't find any substantial and compelling reasons factually for the departure and deny it on that ground.

"Now, the defendant has also argued his sentence is disproportionate to the conduct of the underlying offense. The Court considers that to be a question solely of law in these circumstances. I don't find any factual matters before the Court that attach to that argument that the Court must find and will consider it as an issue of law.

"The legislature has determined the severity level of this crime, set a presumptive range of penalty. The Court understands the argument . . . has some facial validity and I think a frank discussion among all of the law-trained people present would indicate there might be views that there are more serious crimes that are less seriously punished, less serious crimes that are more seriously punished, and the defendant may have an argument that's sound in equity.

"This Court, however, is not a court of equity. A Court must determine whether the law is disproportionate in its sentencing punishment, and that has constitutional dimensions. I cannot make that finding. I do not find that the law is disproportionate. There's no constitutional defect. Accordingly, the motion for departure on that ground is denied as well. The defendant will be required to serve his time in the custody of the Kansas Secretary of Corrections."

Accordingly, Dillon's departure was denied and he was sentenced to 114 months in prison with 24 months of postrelease supervision.

The question of whether this court has jurisdiction over this appeal is a question of law over which this court's scope of review is unlimited. *Harsch v. Miller*, 288 Kan. 280, 286, 200 P.3d 467 (2009).

Dillon contends the district court erred when it determined it must first consider whether his sentence was disproportionate to the crime in violation of the Eighth Amendment to the United States Constitution and Section 9 of the Kansas Constitution Bill

of Rights before it could consider the length of his sentence in relation to the harm caused by his offense.

K.S.A. 21-4721(c) provides that an appellate court shall not review a sentence for a felony conviction that (1) is within the presumptive guidelines sentence for the crime, or (2) is the result of a plea agreement between the State and the defendant which the district court approved on the record. K.S.A. 21-4721(c). See *State v. Graham*, 27 Kan. App. 2d 603, 609, 6 P.3d 928, *rev. denied* 269 Kan. 936 (2000).

A presumptive sentence is "the sentence provided in a grid block for an offender classified in that grid block by the combined effect of the crime severity ranking of the current crime of conviction and the offender's criminal history." K.S.A. 21-4703(q). Moreover, "[t]he sentencing court has discretion to sentence at any place within the sentencing range. The sentencing judge shall select the center of the range in the usual case and reserve the upper and lower limits for aggravating and mitigating factors insufficient to warrant a departure." K.S.A. 21-4704(e)(1). The three numbers within each grid box constitute the range for a presumptive sentence. See K.S.A. 21-4704(f).

Here, Dillon pled no contest to a severity level 5 person felony. See K.S.A. 22-4903(a). The district court sentenced Dillon to 114 months in prison, which was within the presumptive sentence of 128 to 114 months for the severity level of the crime and Dillon's criminal history of B. See K.S.A. 21-4704(a).

The majority states that the district court did not consider whether there was a basis for a substantial and compelling reason to depart. On the contrary, the court specifically found that Dillon had presented no substantial and compelling reason for a departure.

The majority cites *State v. Cisneros*, 42 Kan. App. 2d 376, 380-81, 212 P.3d 246 (2009), to support their conclusion that "the district court incorrectly concluded that it lacked authority to consider disproportionality on the facts of this case." The *Cisneros* case was a probation revocation and has nothing to do with proportionality of a sentence. It is clearly not applicable to the facts of this case.

Regardless of the district court's reasons for denying Dillon's dispositional or durational departure motion, this court lacks jurisdiction to consider the denial because it sentenced Dillon to the presumptive sentence for his offense.

Dillon's appeal should be dismissed.