(609 P.2d 185)

No. 50,717

MARVIN M. POTTRATZ, *Appellant,* v. STEPHEN W. FIRKINS and KAMMERON K. FIRKINS, *Appellees.*

Opinion filed March 21, 1980.

*F. Lawrence McAulay, Jr.,* of Lenexa, for the appellant.

*Robert E. Fabian,* of McAnany, Van Cleave & Phillips, P.A., of Prairie Village, for the appellees.

Before FOTH, C.J., ABBOTT and MEYER, JJ.

FOTH, C.J.: Plaintiff, a real estate broker, brought this action for a commission claimed to have been earned under an agreement with the defendant landowners denominated a "Joint Exclusive Right to Sell." Defendants filed a "Motion for Dismissal of Plaintiff's Petition" which was sustained by the trial court. Plaintiff appeals.

Our first problem is to discern the nature of the trial court's order. In form it merely sustained defendant's motion and dismissed the petition; it contained no findings of fact or conclusions of law. No record of the hearing on the motion was made, so no oral findings were preserved. Plaintiff served and filed a statement of proceedings under Rule No. 3.04 (225 Kan. xxxvii), and defendants served and filed a proposed amendment; neither was submitted to the trial judge for approval as required by the rule. Defendants assert that their motion, although it didn't say so, was a 60-212(*b*)(6) motion for failure to state a claim. It appears, however, that the ruling was necessarily based both on

the trial court's construction of the listing agreement, attached to defendants' motion, and on factual statements of counsel made at the hearing on the motion. Since matters outside the pleadings were considered the net effect, under K.S.A. 60-256, was the rendition of summary judgment. Putting aside the failure of the trial court to comply with the mandatory requirements of K.S.A. 60-252(*a*) and Rule No. 165 (225 Kan. lxxii), we conclude that summary judgment was premature.

The "joint" listing agreement in question was entered into between defendants and two brokers, plaintiff and Hardin-Stockton. Plaintiff's petition essentially alleges that: (1) the parties entered into a contract under which the defendants granted plaintiff a joint exclusive right to sell their property; (2) pursuant to that contract plaintiff produced willing buyers who entered into a contract of sale with the defendants; (3) the execution of the contract of sale entitled the plaintiff to a commission under the "joint exclusive" contract; (4) defendants reneged on their contract with the buyers produced by plaintiff; and (5) defendants' breach of the contract of sale caused damage to plaintiff in the form of loss of commission and miscellaneous expenses and costs. These allegations, if proved, would prima facie entitle plaintiff to his commission under the long established rule reiterated in *Winkelman v. Allen,* 214 Kan. 22, Syl. ¶ 1, 519 P.2d 1377 (1974):

"The general rule is that a real estate agent or broker is entitled to a commission if (*a*) he produces a buyer who is able, ready and willing to purchase upon the proffered terms or upon terms acceptable to the principal; (*b*) he is the efficient and procuring cause of a consummated deal. The latter is subject to a qualification where failure in completion of the contract, or closing title, results from the wrongful act or interference of the principal."

Defendants did not and do not at this stage contend that the buyers produced by plaintiff and originally accepted by them were not "able" to purchase. Rather, they say that the peculiar terms of the joint listing agreement permitted them to repudiate their contract with the buyers produced by plaintiff and accept a later, presumably better, offer from buyers produced by Hardin-Stockton. Those terms include, after routine provisions for advertising and showing, the following:

"5. The Owner agrees to pay the Realtor who makes the sale the regular commission recommended by the Johnson County Board of Realtors, Inc., which is 7% of the selling price, if the Realtor produces a purchaser ready, willing and

able to purchase said property at the price and on the terms stated, or later agreed upon. In the event the property is sold by any other Realtor in cooperation with one of the undersigned Realtors, only then the commission will be divided between the cooperating Realtor and said undersigned Realtor. The undersigned Realtor(s) not participating in the sale shall receive no commission.

"6. Payment of 7% sales commission, computed on the accepted sales price to either of the undersigned Realtors, shall relieve the Owner of all liability to the said companies for payment of additional sales commission."

Defendants' theory, apparently accepted by the trial court, is that under paragraph 6, by selling to Hardin-Stockton's buyer and paying a commission to Hardin-Stockton they were relieved of any obligation to plaintiff.

In concluding that this construction of the contract is wrong we apply certain accepted rules:

A cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to such intention. *Mobile Acres, Inc. v. Kurata,* 211 Kan. 833, Syl. ¶ 2, 508 P.2d 889 (1973). The meaning of a contract should always be determined by a consideration of all pertinent provisions, not by a critical analysis of a single or isolated provision. *Garvey Center, Inc. v. Food Specialties, Inc.,* 214 Kan. 224, Syl. ¶ 3, 519 P.2d 646 (1974). If possible, every provision must be construed "so as to be consistent with every other provision and to give effect to all." *Wiles v. Wiles,* 202 Kan. 613, 619, 452 P.2d 271 (1969). When placing a construction on a written instrument, the law favors reasonable rather than unreasonable interpretations. "Results which vitiate the purpose or reduce the terms of the contract to an absurdity should be avoided." *Garvey Center, Inc. v. Food Specialties, Inc.,* 214 Kan. 224, Syl. ¶ 3.

In trying to find a reasonable construction which will avoid "absurdity," we regard paragraph 5 as the operative paragraph dealing with commissions. Under it a commission would be due to "*the* Realtor who makes *the* sale" by producing a ready, willing and able buyer. If a nonsigning broker participated, the commission was to be divided with him. If a signing broker did not participate in the sale, that broker did not share the commission. Paragraph 6, as we read it, merely clarified the parties' intent that disputes over division of the commission were to be settled between the brokers; so far as the sellers were concerned, payment of one commission fulfilled their obligation for one sale.

What is not covered, nor for obvious reasons even contem-

plated, was the sellers' obligation for *two* sales. We assume that each party contracted in the expectation of good faith conduct by all other parties, including a recognition of the binding effect of contracts. To say that paragraph 6 clearly exonerates the sellers from the obligation to plaintiff which would be incurred if he fully performed reads far more into it than we can find there.

Rather, we construe the contract to fix the parties' respective positions and liabilities whenever the first of the two brokers produced a qualified and accepted buyer. After that, if the sellers (defendants) repudiated their contract without just cause they did so at the risk of owing a commission to the first broker, whether they chose to take the property off the market, sell it themselves, or, as here, sell it through the other broker.

The facts in this case, of course, have not been developed. Whether plaintiff can prove his allegations or whether defendants had good cause to repudiate the alleged contract with plaintiff's purchasers remain to be seen. Summary judgment, therefore, was not appropriate under the view we take of the contract.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.