No. 100,263

STATE OF KANSAS, *Appellee*, v. ROY SEWARD, *Appellant*.

(217 P.3d 443)

Opinion filed October 2, 2009.

*Rachel L. Pickering*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Christina Trocheck*, assistant county attorney, argued the cause, and *Ellen Mitchell*, county attorney, and *Steve Six*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: This is a sentencing appeal after defendant Roy Seward entered guilty pleas to two of eight charges, one count of rape and one count of aggravated criminal sodomy. The victim was Se-

ward's young stepdaughter. Seward received concurrent hard 25 sentences under K.S.A. 21-4643 (Jessica's Law).

This appeal originally asserted that the sentences under Jessica's Law were cruel and/or unusual under the Eighth Amendment to the United States Constitution and Section 9 of the Kansas Constitution Bill of Rights. Since our decisions in *State v. Ortega-Cadelan*, 287 Kan. 157, 194 P.3d 1195 (2008), and *State v. Thomas*, 288 Kan. 157, 199 P.3d 1265 (2009), Seward has filed two Supreme Court Rule 6.09 (2008 Kan. Ct. Rule Annot. 47) letters of additional authority; he now seeks remand to the district court for factual findings and conclusions of law under the rubric set forth in *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978). Seward also challenges the district judge's decision denying his motion for a downward durational departure.

The parties agreed on the record before the district judge that Seward made clear during plea negotiations that he intended to preserve his right to appeal the constitutionality of off-grid sentencing under Jessica's Law.

Seward's departure motion before the district court argued that he should receive a downward durational departure to a guidelines sentence because: (1) There were only two misdemeanors on his criminal record and those convictions had occurred more than 10 years ago; (2) he accepted responsibility for his crimes by pleading guilty and confessing to law enforcement; (3) he has a strong desire to receive treatment; (4) he "has demonstrated extreme remorse and regret for his actions"; and (5) "[t]he life imprisonment sentence provided for by 'Jessica's Law,' K.S.A. 21-4643, is disproportionate and cruel and unusual under the state and federal constitutions."

Seward's motion also recited the results of a sex offender evaluation conducted by A. Elissa Hilyard. Hilyard relied upon a clinical interview and results from administration of several tests—the Static 99, the Level of Service Inventory—Revised (LSI-R), and the Sex Offender Needs Assessment Rating (SONAR). Hilyard's report stated that the Static 99 placed Seward in the medium-low risk category, with a 16 percent chance that he would reoffend in the next 15 years. The LSI-R placed Seward in the moderate risk/

needs category. The SONAR also rated Seward as a moderate risk. Hilyard's report recounted that Seward admitted the victim performed oral sex on him two times but Seward denied having sexual intercourse with her.

Hilyard recommended that Seward:

"1. Enter into a sex offender treatment program and successfully complete it.

"2. Have no contact with minors.

"3. Take monitoring polygraphs to ensure his compliance and safety in the community.

"4. Increase his positive, social activities and have more positive interactions with peers his own age.

"5. Have no sexually explicit materials; no internet access.

"6. Take frequent and random [urinalyses] for substance use."

At the sentencing hearing, defense counsel repeated the arguments from the written motion and entered Hilyard's report into evidence pursuant to stipulation. No further evidence was offered. Counsel made only the following brief reference to the alleged unconstitutionality of Jessica's Law:

"And lastly, I would make an objection, and as part of the plea agreement, the State stated that the Defense could object to the oppressive nature of the life imprisonment that goes along with this statute, the constitutionality, and we do intend to appeal that and that was part of the plea agreement so I would like to make that part of the record so we are able to appeal that issue."

Seward, for his part, apologized for his actions and sought leniency.

In response, the State argued that there were no substantial and compelling reasons to depart. The prosecutor argued several aggravating factors: (1) the nature of the abuse; (2) Seward's position of authority as the victim's stepfather and his caution that she tell no one; and (3) the existence of a medical finding that the victim had experienced an injury to her hymen. The State also contended that Hilyard's assessment of Seward's future likelihood of reoffending was inaccurate because Seward had been untruthful during his evaluation, minimizing and omitting the fact that he had engaged in sexual intercourse with the victim and had penetrated her rectum.

The district judge determined that there were no substantial and compelling reasons for a downward durational departure. The judge said nothing in response to Seward's constitutional challenges to Jessica's Law.

The record before us reflects no subsequent oral or written defense motion for additional district court findings and conclusions on the constitutional claims under Supreme Court Rule 165 (2008 Kan. Ct. Rule Annot. 235).

### Constitutional Challenges to Jessica's Law

Ordinarily, constitutional challenges to a statute raise questions of law subject to unlimited appellate review. *State v. Allen*, 283 Kan. 372, 374, 153 P.3d 488 (2007). But two preliminary questions require attention before the merits can be reached here. The first is whether Seward and his counsel preserved these questions for appeal. The second is whether the factual record before this court is adequate to support any legal ruling by us.

In *Ortega-Cadelan*, we reinvigorated the rule that a constitutional issue generally cannot be asserted for the first time on appeal, specifically examining the justification for an exception to that rule when the issue was a similar challenge to Jessica's Law. The defendant conceded that he had not raised the issue in the district court. We determined that no exception applied and refused to consider the issue. *Ortega-Cadelan*, 287 Kan. at 161; see also *State v. Spotts*, 288 Kan. 650, Syl. ¶ 1, 206 P.3d 510 (2009) (constitutional challenge to Jessica's Law not properly before this court when raised for first time on appeal).

This case is different. Seward's federal and state constitutional challenges to Jessica's Law are no surprise to the State. They evidently were mentioned during plea negotiations, included in his written motion for downward durational departure, and restated on the record at his sentencing hearing. He and his counsel cannot be faulted for failure to call the district judge's attention to these issues. Lack of preservation through objection in the district court is no bar to appellate consideration.

The second question, however, poses a more significant obstacle to any decision we might make on the merits. Seward and his coun-

sel stopped short of moving under Rule 165 to prompt the district judge to place specific findings of fact and conclusions of law on the constitutional challenges in the record. In *Ortega-Cadelan*, we recognized that the analysis of whether a sentence qualifies as cruel or unusual "includes both factual and legal questions" and listed the three relevant factors from our decision in *Freeman*, 223 Kan. at 367:

" '(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

" '(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

" '(3) A comparison of the penalty with punishments in other jurisdictions for the same offense.' " 287 Kan. at 160-61.

We then observed that the first of the three factors was "inherently factual, requiring examination of the facts of the crime and the particular characteristics of the defendant." *Ortega-Cadelan*, 287 Kan. at 161.

In *Ortega-Cadelan*, because the issue had never been raised before the district court, neither party had presented relevant evidence or arguments on this factor. Although we acknowledged that the two other *Freeman* factors depended on legal determinations, we stated:

"[O]ne consideration is not necessarily controlling over the other considerations; in fact, in *Freeman* the three considerations were referred to as 'the three pronged test.' [Citation omitted.] Ultimately, one consideration may weigh so heavily that it directs the final conclusion. Before that conclusion is reached, however, consideration should be given to each prong of the test. Particularly where arguments focus upon proportionality, . . . the factual aspects of the test are a necessary part of the overall analysis." *Ortega-Cadelan*, 287 Kan. at 161.

In *Thomas*, as in *Ortega-Cadelan*, we ruled that the defendant had not adequately addressed his constitutional challenge to Jessica's Law before the district court. In addition, in response to the defendant's argument that the appellate record was nevertheless

sufficient for this court to rule on the merits, we said: "This argument ignores the role of this court: Appellate courts do not make factual findings but review those made by district courts. [Citation omitted.] Here, no factual findings were made upon which this court can base an analysis of whether the sentence is cruel or unusual." *Thomas*, 288 Kan. at 161.

The same is true here. There are no district court findings and conclusions on the *Freeman* factors. Although rejection of Seward's constitutional challenges to Jessica's Law may be implied by the district judge's silence, such silence cannot supply a sound foundation for our appellate review. See *Thomas*, 288 Kan. at 161; see also *State v. Easterling*, 289 Kan. 470, 487, 213 P.3d 418 (2009) (although district court's detailed recitation in ruling on departure motion included certain factual findings, findings cut against rather than supported defendant's position on first factor from *Freeman*; no argument made on third *Freeman* factor; issue not before court "in a posture to be effectively decided").

In this case, the district judge and Seward and his counsel share responsibility for the absence of adequate findings and conclusions in the record. Our Rule 165 places the primary duty for arriving at such findings and conclusions on the district judge. It states simply that "[i]n all contested matters submitted to a judge without a jury . . . , the judge shall state the controlling facts required by K.S.A. 60-252, and the legal principles controlling the decision." 2008 Kan. Ct. R. Annot. 235. Numerous past decisions of this court and the Court of Appeals have characterized this duty as mandatory. See, *e.g.*, *Hanks v. Riffe Constr. Co.*, 232 Kan. 800, 802, 658 P.2d 1030 (1983); *State v. Carver*, 32 Kan. App. 2d 1070, 1078, 95 P.3d 104 (2004); *University of Kansas Mem. Corp. v. Kansas Power & Light Co.*, 31 Kan. App. 2d 177, 181, 61 P.3d 741 (2003); *Jack v. City of Wichita*, 23 Kan. App. 2d 606, 610, 933 P.2d 787 (1997); *In re Marriage of Case*, 18 Kan. App. 2d 457, 464, 856 P.2d 169 (1993); *Dillons Food Stores, Inc., v. Brosseau*, 17 Kan. App. 2d 657, 659, 842 P.2d 319 (1992); *Elite Professionals, Inc. v. Carrier Corp.*, 16 Kan. App. 2d 625, 629, 827 P.2d 1195 (1992); *Pottratz v. Firkins*, 4 Kan. App. 2d 469, 470, 609 P.2d 185 (1980). Yet we have also held that a litigant who fails to object to inadequate Rule

165 findings and conclusions in the district court is foreclosed from making an appellate argument that would depend upon what is missing. See *Blair Constr., Inc. v. McBeth*, 273 Kan. 679, 688, 44 P.3d 1244 (2002); *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 378, 855 P.2d 929 (1993).

In view of the tension produced by these authorities, the newness of the constitutional issues raised by Jessica's Law, and our recognition that the efforts made by Seward and his counsel to keep the issues alive beyond sentencing substantially outstripped those of defendants and counsel in *Ortega-Cadelan, Thomas, Spotts,* and *Easterling,* we are willing to remand this case to the district court for entry of sufficient factual findings and conclusions of law. On remand, the district judge shall also be empowered to decide, in her discretion, whether she requires any further hearing, evidentiary or otherwise, to enable her to discharge her Rule 165 duty.

We emphasize that we believe this case to be exceptional. In the future, a defendant who wishes to appeal on the basis of a constitutional challenge to a sentencing statute must ensure the findings and conclusions by the district judge are sufficient to support appellate argument, by filing of a motion invoking the judge's duty under Rule 165, if necessary.

### Downward Durational Departure

Our standard of review on the denial of a sentencing departure is abuse of discretion. Judicial discretion is abused " ' "when no reasonable person would take the view adopted by the district judge." ' " *Thomas,* 288 Kan. at 164 (quoting *Ortega-Cadelan,* 287 Kan. at 165).

On appeal, Seward points to several facts that he contends constitute substantial and compelling reasons for departure from the Jessica's Law hard 25 sentences: his lack of a prior felony, his own sexual victimization between the ages of 7 and 10, his mother's and his own bipolar disorder, his housing in a "boy's home" during his formative years, other family dysfunction, and his low intelligence and status as a high school dropout. Seward also argues that he has expressed a strong desire for treatment, has shown extreme re-

morse, and has saved his victim from the trauma of testifying by pleading guilty. By his calculation, even with a departure sentence, he would still serve 176 months and be subject to lifetime post-release supervision.

K.S.A. 21-4643(d) provides:

"[T]he sentencing judge shall impose the mandatory minimum term of imprisonment provided by subsection (a), unless the judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure. If the sentencing judge departs from such mandatory minimum term of imprisonment, the judge shall state on the record at the time of sentencing the substantial and compelling reasons for the departure. . . . [M]itigating circumstances shall include, but are not limited to, the following:

"(1) The defendant has no significant history of prior criminal activity.

"(2) The crime was committed while the defendant was under the influence of extreme mental or emotional disturbances.

"(3) The victim was an accomplice in the crime committed by another person, and the defendant's participation was relatively minor.

"(4) The defendant acted under extreme distress or under the substantial domination of another person.

"(5) The capacity of the defendant to appreciate the criminality of the defendant's conduct or to conform the defendant's conduct to the requirements of law was substantially impaired.

"(6) The age of the defendant at the time of the crime."

This court has defined "substantial" as "something that is real, not imagined; something with substance and not ephemeral," while the term " 'compelling' implies that the court is forced, by the facts of a case, to leave the status quo or go beyond what is ordinary." *State v. McKay*, 271 Kan. 725, 728, 26 P.3d 58 (2001).

In ruling on Seward's departure motion, the district judge orally reviewed the mitigating and aggravating factors advanced by Seward and the State, engaging in an appropriate weighing of the competing considerations. The defense has demonstrated no abuse of discretion in the district judge's denial of its departure motion.

Affirmed in part and reversed and remanded in part for further proceedings consistent with this opinion.

❊ ❊ ❊ ❊ ❊

LUCKERT, J., concurring in part and dissenting in part: I concur in the majority's holding that the denial of Roy Seward's departure

motion was not an abuse of the district court's discretion. However, I respectfully dissent from the majority's decision to remand this case for additional findings of fact and conclusions of law regarding Seward's argument that sentencing him to life is a cruel and unusual punishment.

As the majority notes, this case follows four decisions in which this court has refused to consider similar arguments: *State v. Easterling*, 289 Kan. 470, 213 P.3d 418 (2009); *State v. Spotts*, 288 Kan. 650, 206 P.3d 510 (2009); *State v. Thomas*, 288 Kan. 157, 199 P.3d 1265 (2009); and *State v. Ortega-Cadelan*, 287 Kan. 157, 194 P.3d 1195 (2008). In each of those cases, the defendant was given a life sentence pursuant to Jessica's Law—K.S.A. 21-4643; the defendant argued on appeal that the sentence was cruel and unusual without having developed that argument before the district court; and this court affirmed the defendant's life sentence without further proceedings.

Here, the majority departs from these past decisions by ordering a remand for additional fact-finding by the district court. The majority justifies the remand because of (1) the tension in authorities regarding whether a district court or a party has the obligation to assure there are adequate findings as required by Supreme Court Rule 165 (2008 Kan. Ct. R. Annot. 235); (2) the newness of constitutional issues raised by Jessica's Law; and (3) the majority's "recognition that the efforts made by Seward and his counsel to keep the issues alive beyond sentencing substantially outstripped those of defendants and counsel" in the four previous cases. The first two justifications do not distinguish this case—the same tension applied in the four previous cases, and the Jessica's Law issues were even newer when the previous cases were considered. Regarding the third justification, the majority does not explain how Seward's efforts "substantially outstripped" the others' efforts or what makes this case "exceptional" as the majority concluded, and I fail to see a distinction or basis for considering this case exceptional.

The lack of distinction is best illustrated by comparing this case to *Thomas*. Thomas had filed a motion to depart and in that written motion had argued a life sentence would be cruel and unusual. Other than this passing reference—which is virtually identical to

that in Seward's written departure motion—Thomas did not support his argument with evidence or argue any specifics. We stated:

"Thomas did not address these factors [from *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978)] before the district court, did not present evidence, and did not ask the court to make findings of fact or conclusions of law on the issue. See *Dragon v. Vanguard Industries*, 282 Kan. 349, 356, 144 P.3d 1279 (2006) (litigant must object to inadequate findings of fact and conclusions of law before the trial court to preserve the issue for appeal); Supreme Court Rule 165 (2008 Kan. Ct. R. Annot. 235). Moreover, although Thomas mentioned that a life sentence would be a cruel or unusual punishment in his motion, on appeal he advances a different theory regarding how the sentence violates § 9 of the Kansas Constitution Bill of Rights. In his motion, Thomas based the argument on his age and the likelihood he would not live long enough to be paroled. On appeal he argues the sentence is disproportionate to the wrong and to other sentences provided for under the KSGA." *Thomas*, 288 Kan. at 159-60.

Similarly, Seward did not argue the *Freeman* factors, did not submit evidence for the purpose of determining the *Freeman* factors, and did not ask the district court to make findings of fact or conclusions of law regarding the *Freeman* factors. Seward, like Thomas and the other defendants, gave the district court no insight into the specifics of his argument—his counsel simply announced that the plea agreement allowed Seward to raise the argument on appeal and that he intended to do so.

The majority seems to feel that Seward made more of an effort to submit a factual basis than had the other defendants. However, all Seward does is point to an evaluation that was considered in support of Seward's departure motion. Similarly, each of the other defendants in the four prior cases had been evaluated and sought a departure from the life sentence using the evaluation as support for the argument. Although those evaluations were not always in the record on appeal (see *e.g.*, *Ortega-Cadelan*, 287 Kan. at 161), in each case an evaluation was available to the district court and in at least two of the cases the defendants asked us to consider these evaluations as evidence relating to the cruel and unusual punishment argument. *E.g.*, *Easterling*, 289 Kan. at 485-87; *Thomas*, 288 Kan. at 161. This point does not distinguish Seward's case.

Arguably a distinction arises because Seward's counsel, during the sentencing hearing, uttered, "[T]he Defense would object to

the oppressive nature of the life imprisonment that goes along with this statute, the constitutionality, and we do intend to appeal that." In my view, this is a distinction without a difference because Thomas and some of the other defendants put similar words on paper in their motions for departure. The difference between stating an argument in a departure motion that is considered at the sentencing hearing and making a statement during the hearing might be significant if we were considering an issue where case law demanded a contemporaneous objection. Or this distinction might make a difference if we were scouring the record for any mention of a legal issue to determine if it had been raised below and the oral statement raised different concerns than did the written motion. We are doing neither of those tasks. Rather, this appeal concerns whether Seward met his evidentiary burden, and the record reflects that Seward made no more effort to do so than did any of the four previous defendants who raised their appeal to this court.

In fact, Seward's counsel handed a "free pass" to the district court by announcing that an argument regarding the "oppressive nature of the life imprisonment" would be argued on appeal. In essence, the defense told the district court not to consider the cruel and unusual punishment argument. In light of that announcement, it is no surprise the district court did not make findings regarding the *Freeman* factors.

Moreover, the State should not be expected to have created whatever factual record it felt necessary to answer an argument that the sentence was cruel and unusual after defense counsel's statement that it was not presenting the issue to the district court, especially when it is hard to discern the nature of the defense's argument from the oblique reference to the "oppressive nature" of the sentence. As the State argues and as we have concluded in the previous cases, the purpose of requiring issues to be presented to the district court is to give all parties—not just the movant—an opportunity to create a record. Exceptions to this rule have been recognized when the issue raises purely a legal question and, thus, no party is disadvantaged by the lack of a factual record. Where, as here, there is a factual component to an argument, an appellate court cannot determine what evidence, if any, the opposing party

might have admitted if the defendant had adequately raised the issue. See *Ortega-Cadelan*, 287 Kan. at 161. Suggesting, as has the majority in this case, that this defect can be cured by giving the district court the discretion to reopen the record only excuses the defendant from having failed to meet his burden to establish the cruel and unusual nature of his sentence.

In my view, a remand for additional findings of fact and conclusions of law is only appropriate if the parties have created a record relating to an issue and the only thing lacking is a record of the district court's findings regarding that admitted evidence and the conclusions of law that arise from those findings. See *White v. State*, 201 Kan. 801, 804-05, 443 P.2d 182 (1968); *cf. In re Marriage of Bradley*, 258 Kan. 39, 50, 899 P.2d 471 (1995) (in civil case, distinguishing sufficiency of evidence argument, which can be raised regardless of failure to object to inadequacy of district court's findings). But, there is no basis to remand when a party invited the district court to ignore the issue, did not present arguments to the district court, did not present evidence supporting the argument, and potentially disadvantaged the opposing party who might have developed a different record had the argument been presented.

Consequently, remand is inappropriate in this case. I would affirm Seward's sentence.