NOT DESIGNATED FOR PUBLICATION

No. 115,056

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANTHONY ROBERT METZGER,
*Appellant*.


MEMORANDUM OPINION

Appeal from Marshall District Court; JOHN L. WEINGART, judge. Opinion filed June 30, 2017. Affirmed in part, reversed in part, and remanded.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Laura E. Johnson-McNish*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before SCHROEDER, P.J., BUSER, J., and WALKER, S.J.


BUSER, J.:  Anthony Robert Metzger pled no contest to aggravated indecent liberties with a child and indecent liberties with a child. As part of Metzger's overall sentence, the district court ordered him to serve 36 months on postrelease supervision. Four years later, on motion of the State to correct an illegal sentence, the district court modified Metzger's sentence to include a lifetime postrelease supervision term. After unsuccessfully opposing the sentence modification, Metzger filed a motion to withdraw his pleas which the district court denied. Metzger appeals.

1

Metzger raises three contentions on appeal. First, he asserts the district court erred in applying K.S.A. 2016 Supp. 22-3717(d)(1)(G) to his postrelease supervision sentence. Second, he requests a remand to allow the district court to address whether the imposition of lifetime postrelease supervision violates the cruel and unusual punishment clauses of the United States and Kansas Constitutions. Third, Metzger claims the district court abused its discretion when it denied his motion to withdraw pleas.

FACTUAL AND PROCEDURAL BACKGROUND

On February 18, 2011, the State of Kansas charged Metzger with one count of rape in violation of K.S.A. 21-3502(a)(1) [now K.S.A. 2016 Supp. 21-5503] (a severity level 1 person felony); one count of aggravated indecent liberties with a child more than 14 years of age but less than 16 years of age in violation of K.S.A. 21-3504(a)(1) [now K.S.A. 2016 Supp. 21-5506] (a severity level 3 person felony); one count of criminal threat in violation of K.S.A. 21-3419 [now K.S.A. 2016 Supp. 21-5415] (a severity level 9 person felony); and one count of aggravated endangering of a child in violation of K.S.A. 21-3608a(a)(1) [now K.S.A. 2016 Supp. 21-5601] (a severity level 9 person felony). The State alleged these offenses occurred between September 2010 and November 2010.

Prior to trial, Metzger entered into a plea agreement with the State. On August 2, 2011, in accord with the plea agreement, Metzger pled no contest to aggravated indecent liberties with a child more than 14 years of age but less than 16 years of age in violation of K.S.A. 21-3504(a)(1) (a severity level 3 person felony), and indecent liberties with a child more than 14 years of age but less than 16 years of age in violation of K.S.A. 21-3503(a)(1) (a severity level 5 person felony). At the request of the State and in keeping with the plea agreement, the district court dismissed the remaining charges.

2

The district court questioned Metzger at length regarding the plea agreement. Metzger was informed that the maximum sentence for committing aggravated indecent liberties ranged from 55 months to 247 months in prison with a 24-month postrelease supervision term. With regard to the indecent liberties charge, the district court advised Metzger that the maximum sentence ranged from 31 months to 136 months in prison and a 24-month postrelease supervision term. Thereafter, the district court had a colloquy with Metzger to ensure that he understood the terms of the plea agreement and had freely agreed to enter his no contest pleas. Metzger's pleas were accepted by the district court and he was found guilty of the two sexually violent crimes.

At sentencing, Metzger's counsel stated that, "pursuant to the plea agreement, [Metzger was] not in a position to ask for anything other than standard sentencing," although counsel requested that his sentences be served concurrently. For its part, the State sought consecutive sentences. Upon Metzger's aggravated indecent liberties conviction, the district court sentenced the defendant to 72 months' imprisonment with 36 months' postrelease supervision. Upon Metzger's indecent liberties conviction, the district court sentenced him to 32 months' in prison with 24 months' postrelease supervision. The district court ordered the sentences to be served concurrently.

Nearly 4 years later, in June 2015, the Kansas Department of Corrections informed the district court that Metzger's controlling 36-month postrelease supervision term was illegal and that he was, in fact, subject to lifetime postrelease supervision. As a result, the State filed a motion to correct Metzger's illegal sentence. In response, Metzger filed a pro se motion opposing the State's request to correct illegal sentence and a pro se motion to withdraw his no contest pleas. After an evidentiary hearing, the district court granted the State's motion to correct illegal sentence and resentenced Metzger to a controlling term of lifetime postrelease supervision. Additionally, the district court denied Metzger's motion to withdraw pleas, finding that Metzger had not shown any manifest injustice.

Metzger filed this timely appeal.

## MODIFICATION OF SENTENCE TO LIFETIME POSTRELEASE SUPERVISION

For his first issue on appeal, Metzger contends the district court erred when it modified his sentence to impose lifetime postrelease supervision pursuant to K.S.A. 2016 Supp. 22-3717(d)(1)(G). On the contrary, Metzger argues that the district court should have imposed a controlling 36-month period of postrelease supervision plus good time and program credits pursuant to K.S.A. 2016 Supp. 22-3717(d)(1)(D).

Under K.S.A. 22-3504(1), an illegal sentence may be corrected at any time. Whether a sentence is illegal is a question of law over which this court has unlimited review. *State v. Moncla*, 301 Kan. 549, 551, 343 P.3d 1161 (2015). The Kansas Supreme Court has defined an "'illegal sentence'" as:

> "'(1) a sentence imposed by a court without jurisdiction; (2) a sentence that does not conform to the applicable statutory provision, either in character or the term of authorized punishment; or (3) a sentence that is ambiguous with respect to the time and manner in which it is to be served. [Citations omitted.]'" 301 Kan. at 551.

The question of whether the district court erred in ordering lifetime postrelease supervision also turns on the interpretation of K.S.A. 2016 Supp. 22-3717. Interpretation of statutes is a question of law subject to unlimited review by this court. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

The relevant provisions of K.S.A. 2016 Supp. 22-3717 state:

> "(d)(1) *Persons sentenced for crimes, other than off-grid crimes, committed on or after July 1, 1993, or persons subject to subparagraph (G), will not be eligible for parole,*

*but will be released to a mandatory period of postrelease supervision* upon completion of the prison portion of their sentence as follows:

. . . .

(B) Except as provided in subparagraphs (D) and (E), persons sentenced for nondrug severity levels 5 and 6 crimes, drug severity level 3 crimes committed on or after July 1, 1993, but prior to July 1, 2012, and drug severity level 4 crimes committed on or after July 1, 2012, must serve 24 months on postrelease supervision.

. . . .

(D) Persons sentenced to a term of imprisonment that includes a sentence for a sexually violent crime as defined in K.S.A. 22-3717, and amendments thereto, a sexually motivated crime in which the offender has been ordered to register pursuant to K.S.A. 22-3717 (d)(1)(D)(vii), and amendments thereto, electronic solicitation, K.S.A. 21-3523, prior to its repeal, or K.S.A. 2016 Supp. 21-5509, and amendments thereto, or unlawful sexual relations, K.S.A. 21-3520, prior to its repeal, or K.S.A. 2016 Supp. 21-5512, and amendments thereto, shall serve the period of postrelease supervision as provided in subsections (d)(1)(A), (d)(1)(B) or (d)(1)(C) plus the amount of good time and program credit earned and retained pursuant to K.S.A. 21-4722, prior to its repeal, or K.S.A. 2016 Supp. 21-6821, and amendments thereto, on postrelease supervision.

. . . .

(G) Except as provided in subsection (u), *persons convicted of a sexually violent crime committed on or after July 1, 2006, and who are released from prison, shall be released to a mandatory period of postrelease supervision for the duration of the person's natural life*." (Emphasis added.)

In the present case, the State argues and the sentencing court agreed that Metzger's original controlling sentence of 36 months' postrelease supervision was illegal because it failed to conform to the applicable statutory provision—K.S.A. 2016 Supp. 22-3717(d)(1)(G)—in that it failed to order lifetime postrelease supervision upon Metzger's aggravated indecent liberties conviction.

This issue, determining whether subsection (D) or subsection (G) applies in cases of individuals, like Metzger, who were convicted of a sexually violent crime after July 1,

2006, has been considered by a number of panels from our court, most notably in *State. v. Hermann*, 53 Kan. App. 2d 147, 384 P.3d 1019 (2016) *petition for rev. filed* December 19, 2015. See *State v. Brook*, No. 115,657, 2017 WL 1535138 (Kan. App. 2017) (unpublished opinion) *petition for rev. filed* May 17, 2017; *State v. Combs*, No. 115,638, 2017 WL 1296312 (Kan. App. 2017) (unpublished opinion) *petition for rev. filed* May 8, 2017; *State v. Kness*, No. 115,480, 2017 WL 1295994 (Kan. App. 2017) (unpublished opinion) *petition for rev. filed* May 8, 2017; *State v. Younkman*, No. 115,606, 2017 WL 1035473 (Kan. App. 2017) (unpublished opinion) *petition for rev. filed* March 30, 2017; *State v. Rothstein*, No. 114,749, 2016 WL 7031921 (Kan. App. 2016) (unpublished opinion) *petition for rev. filed* December 19, 2016.

In *Herrmann*, our court held that "K.S.A. 2015 Supp. 22-3717(d)(1)(D) only applies to persons convicted of a sexually violent crime after July 1, 1993, but before July 1, 2006." 53 Kan. App. 2d 147, Syl. ¶ 5. The court also held that "[t]here are no persons convicted of a sexually violent crime to whom both subparagraph K.S.A. 2015 Supp. 22-3717(d)(1)(D) and subparagraph K.S.A. 2015 Supp. 22-3717(d)(1)(G) apply." 53 Kan. App. 2d 147, Syl. ¶ 6. Thus, the *Herrmann* court found that any persons convicted of a sexually violent crime that was committed after July 1, 2006, must be sentenced to a period of lifetime postrelease supervision under K.S.A. 2015 Supp. 22-3717(d)(1)(G). The *Herrmann* court gave the following reasons for its holdings:

"We find the plain language of the statute clearly decides the issue presented. Subsection (d)(1) explains that persons sentenced for crimes committed after July 1, 1993, will not be eligible for parole; instead, they will be subject to mandatory postrelease supervision as provided in the subparagraphs that follow. Notably, however, this subsection (d)(1) expressly states that the mandatory postrelease supervision provided in the subparagraphs that follow *do not apply* to 'persons subject to subparagraph (G).' Subparagraph (G) provides that 'persons convicted of a sexually violent crime committed on or after July 1, 2006, and who are released from prison, shall be released to a mandatory period of postrelease supervision for the duration of the

person's natural life.' Herrmann was convicted of attempted aggravated indecent liberties with a child, which is a sexually violent crime under subsection (d)(5)(C) and (d)(5)(M). His conviction occurred after July 1, 2006. Because Herrmann is subject to subparagraph (G), no other subparagraph following subsection (d)(1) applies to him—including subparagraph (D).

"... The provisions in each subparagraph apply to a distinct class of persons. K.S.A. 22-3717 as a whole applies to all persons convicted of a crime after July 1, 1993. See L. 1992, ch. 239, sec. 270 ('Persons sentenced for crimes committed on or after July 1, 1993, will not be eligible for parole, but will be released to a mandatory period of postrelease supervision upon completion of the prison portion of their sentence.'). Subparagraph (G) was added to the statute in 2006 to create an explicit exception applicable only for 'persons convicted of a sexually violent crime committed on or after July 1, 2006.' See L. 2006, ch. 212, sec. 19 (also adding language to [d][1] excepting 'persons subject to subparagraph [G]'). Reading subparagraph (D) in pari materia, it falls under subsection (d)(1) and so applies to all persons but those expressly excluded: persons sentenced for off-grid crimes committed on or after July 1, 1993, and persons committing a sexually violent crime on or after July 1, 2006, as stated in subparagraph (G). Therefore, subparagraph (D) only applies to persons convicted of a sexually violent crime after July 1, 1993, but before July 1, 2006. Thus, there are no persons convicted of a sexually violent crime to whom both subparagraph (D) and subparagraph (G) apply. Construing the statute as a whole and giving effect to all of the statutes, as this court must, there is no conflict or ambiguity in amended subsection (d)(1)." *Herrmann*, 53 Kan. App. 2d at 152-53.

On appeal, Metzger's legal arguments parallel those raised by the defendant and rejected by our court in *Herrmann*. We adopt the holding and rationale of *Herrmann*, and find that it should be applied in this case. After July 1, 2006, Metzger was convicted of indecent liberties and aggravated indecent liberties, both offenses defined as sexually violent crimes pursuant to K.S.A. 2016 Supp. 22-3717(d)(5)(B), (C). Because Metzger is subject to subparagraph (d)(1)(G), no other subparagraph following subsection (d)(1) applies to him—including subparagraph (D). See *State v. Reed*, 50 Kan. App. 2d 1133,

7

1135, 336 P.3d 912 (2014) ("[T]he district court does not have discretion to ignore the lifetime postrelease supervision requirement of K.S.A. 2011 Supp. 22-3717[d][1][G].").

The district court did not err in ruling that Metzger's original controlling sentence was illegal and that a lifetime postrelease supervision term should be imposed.

REMAND TO DETERMINE CONSTITUTIONALITY OF LIFETIME POSTRELEASE SUPERVISION

Next, Metzger does not argue that his lifetime postrelease supervision sentence is unconstitutional because of the cruel and unusual punishment clauses found in the Eighth Amendment to the United States Constitution or § 9 of the Kansas Constitution Bill of Rights. Instead, Metzger candidly concedes this issue was not properly developed in the district court, and he requests a remand to allow the district court to address this issue.

As Metzger states in his brief, under *State v. Naputi*, 293 Kan. 55, 67-68, 260 P.3d 86 (2011),

> "To preserve the argument that lifetime postrelease supervision constitutes cruel and unusual punishment, the defendant must properly raise the issue before the district court and request the district court's findings on the *Freeman* factors enunciated in *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978), otherwise the appellate court will not review the argument."

In this case, the district court did not make factual findings or legal conclusions related to the *Freeman* factors—and indeed, did not even address the argument—at any point during its hearing on the State's motion to correct illegal sentence. Metzger's defense counsel simply noted the issue while Metzger made only one cursory and conclusory reference to the subject matter, saying, "I feel [imposition of lifetime postrelease supervision] voids our plea agreement and it violates the Kansas Bill of Rights, cruel and unusual punishment and the United States Constitutional Act on cruel

8

and unusual punishment." Under these circumstances, we agree with Metzger and the State that it is apparent this issue is not properly before our court.

But Metzger cites *State v. Seward*, 289 Kan. 715, 217 P.3d 443 (2009), for the proposition that even though the district court did not conduct the requisite *Freeman* analysis below, this case should be remanded for the district court to conduct a hearing and make the appropriate factual findings and legal conclusions.

While Metzger is correct that *Seward* permitted a remand under similar circumstances to the case on appeal, our Supreme Court in *Seward* also indicated that a remand for a hearing on the *Freeman* factors was an *exceptional* ruling. *Seward*, 289 Kan. at 721. Indeed, our Supreme Court admonished:

> "In the future, a defendant who wishes to appeal on the basis of a constitutional challenge
> to a sentencing statute must ensure the findings and conclusions by the district judge are
> sufficient to support appellate argument, by filing of a motion invoking the judge's duty
> under [Supreme Court] Rule 165 [2017 Kan. S. Ct. R. 214], if necessary." 289 Kan. at
> 721.

No such motion was filed by Metzger in the district court. As the State views this matter: "The decision in *Seward* was issued on October 2, 2009. The hearing to correct an illegal sentence in this case took place on October 6, 2015. No exceptional situation exists in this case to excuse seeking finding of fact as it did in *Seward*."

The case on appeal presents a situation similar to *State v. Clay*, No. 104,797, 2013 WL 1444184 (Kan. App. 2013) (unpublished opinion), in which the defendant challenged the constitutionality of his lifetime postrelease supervision sentence. In *Clay*, the district court failed to make any factual findings regarding the first *Freeman* factor and made only passing reference to the *Freeman* analysis. *Clay*, 2013 WL1444184, at *4. Highlighting the unique situation in *Seward*, our court rejected Clay's call for a remand

noting that Clay "could have requested that the district court make the appropriate findings and conclusions . . . before pressing forward with [his] appeal." 2013 WL1444184, at *5. Because of Clay's omission, our court ruled that his constitutional challenge failed. 2013 WL1444184, at *5.

*Seward* and *Clay* make clear that a defendant who challenges the constitutionality of a lifetime postrelease supervision sentence must ensure that appropriate factual findings and legal conclusions are made by the district court in order to preserve the matter for appeal. Metzger concedes the necessary findings were not made in this case. Accordingly, we decline to review this issue.

DENIAL OF MOTION TO WITHDRAW PLEA

Finally, Metzger contends the district court erred in denying his postsentence motion to withdraw his no contest pleas. In particular, Metzger claims his "right to due process was violated because he was not informed of the maximum penalties his plea entailed."

Our standards of review provide that appellate courts will not disturb a district court's denial of a postsentence motion to withdraw plea absent an abuse of discretion. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014). A judicial action constitutes an abuse of discretion if it is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011). Of note, the party asserting an abuse of discretion has the burden of showing such abuse. *State v. Stafford*, 296 Kan. 25, 45, 290 P.3d 562 (2012). Moreover, appellate courts give deference to a district court's findings of fact so long as those findings are supported by substantial competent evidence. *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011).

Preliminarily, we note Metzger's concession that his motion to withdraw pleas was filed more than 1 year after the dismissal of his prior appeal. This is important because K.S.A. 2016 Supp. 22-3210(e)(1) requires such a motion to be filed within that 1-year time period. However, as Metzger notes, subsection (2) of the statute also permits a court to extend the 1-year time period upon a showing of excusable neglect. K.S.A. 2016 Supp. 22-3210(e)(2). Metzger argues that he "necessarily has excusable neglect, as the events necessitating withdrawal of his plea did not manifest until long after the time to file such a motion had expired." We think Metzger has a good point. Moreover, the State does not argue that Metzger's motion to withdraw pleas is untimely. Under the circumstances, we agree with the district court that Metzger's motion was not precluded for having been filed beyond the 1-year time period set forth in K.S.A. 2016 Supp. 22-3210(e)(1).

Our analysis of the merits requires us to answer two questions: First, did the district court's failure to inform Metzger that his pleas would result in a controlling lifetime postrelease supervision term violate his due process rights under K.S.A. 2016 Supp. 22-3210(a)? Second, if Metzger's due process rights were violated, did the district court err in ruling that this violation did not constitute a manifest injustice allowing Metzger to withdraw his pleas in accordance with K.S.A. 2016 Supp. 22-3210(e)(2)?

K.S.A. 2016 Supp. 22-3210(a)(2) provides that a district court must inform "the defendant of the consequences of the plea, including . . . *the maximum penalty provided by law*." (Emphasis added.) Due process of law requires that a criminal defendant be informed of the direct consequences of a plea. Our Supreme Court has stated that postrelease supervision is a direct consequence of a plea because it is definite, automatic, and immediately follows a period of imprisonment. *State v. Moody*, 282 Kan. 181, 195-96, 144 P.3d 612 (2006); *State v. Barahona*, 35 Kan. App. 2d 605, Syl. ¶ 7, 132 P.3d 959 (2006) ("[T]he postrelease supervision period attending a felony conviction is not speculative or conditional.").

In *Barahona*, our court addressed a district court's failure at the time of the plea to inform the defendant of the postrelease supervision term to be imposed upon his convictions for robbery and burglary. Importantly, in that case, the total months of imprisonment and postrelease supervision later imposed upon Barahona were *less than* the total possible years of imprisonment the defendant was advised he was facing at the time of his pleas. 35 Kan. App. 2d at 614-15.

In *Barahona*, our court set forth the following rule:

> "Due process is not violated by failure to advise a criminal defendant of the applicability of a postrelease supervisory period or mandatory parole if the sentence assigned to the defendant and any mandatory supervised period following his or her release does not exceed the maximum penalty term the defendant was told at sentencing." *Barahona*, 35 Kan. App. 2d 605, Syl. ¶ 8.

Metzger embraces the rule from *Barahona* but distinguishes his case from the facts in *Barahona*. In particular, he points out the maximum possible sentence the district court informed him could be imposed for a conviction of aggravated indecent liberties was 283 months (247-month prison term, plus 36 months' postrelease supervision); while the maximum term he was informed could be imposed for a conviction of indecent liberties was 160 months (136-month prison term, plus 24 months' postrelease supervision). Employing the *Barahona* analysis, at the time Metzger pled and was sentenced he was subject to a possible maximum sentence of 443 months, while after the modification of his sentence, given the imposition of a lifetime postrelease term, he faced an indeterminate lifetime sentence. By employing the *Barahona* approach, Metzger argues that because the district court significantly increased his sentence beyond what the court and his attorney advised him was possible at the time of his pleas, his right to due process was violated.

Significantly, the State does not contest Metzger's assertion that the district court's failure to properly advise him of the lifetime postrelease supervision term resulted in a due process violation. In our view, applying K.S.A. 2016 Supp. 22-3210(a)(2), *Moody*, and *Barahona* to the facts of this case results in the legal conclusion that Metzger's due process rights were violated at the time of his pleas because he was not properly informed of the maximum length of the controlling postrelease supervision term.

Given that Metzger's right to due process was violated, did the district court err in ruling that this violation did not constitute a manifest injustice allowing Metzger to withdraw his pleas?

Under K.S.A. 2016 Supp. 22-3210(d)(2), a district court may grant a defendant's postsentence motion to withdraw plea upon a showing that the plea would result in manifest injustice. Manifest injustice has been defined as something that is "obviously unfair or shocking to the conscience." *Barahona*, 35 Kan. App. 2d at 608-09. Factors a court generally considers in determining whether a defendant has shown the manifest injustice necessary to withdraw a plea are set forth in *Fritz*: "(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made." 299 Kan. at 154.

With regard to the first factor, at the hearing on Metzger's motion to withdraw plea his previous attorney testified regarding the sentencing information he provided to his client. During this testimony, Metzger's attorney confirmed that he had erroneously advised his client that postrelease supervision was 36 months for a conviction of aggravated indecent liberties and 24 months for a conviction of indecent liberties. For his part, Metzger testified that this information was important to his decision to plead no contest. He was asked "would you have entered your pleas to the two charges if the postrelease supervision would have been lifetime?" Metzger responded, "I don't think

13

so." We view defense counsel's mistake as a significant oversight. We are persuaded that this first factor weighs in favor of Metzger. See *Barahona*, 35 Kan. App. 2d at 613-15 (examining ineffective assistance of counsel for failure to advise defendant of potential postrelease supervisory period).

Metzger claims the second and third factors are applicable. He argues:

"Mr. Metzger was misled by the district court and both counsel regarding the term of postrelease supervision prior to his plea. The misleading information he received prior to pleading guilty prevented him from understanding the nature of his plea, preventing him from making a knowing election when he chose to plead guilty, denying him due process."

While Metzger was mistakenly misinformed by the district court and counsel, we do not find any evidence that this misinformation was calculated to purposely mislead the defendant.

While the second factor does not favor Metzger, the third factor (which mirrors the general due process requirement set forth in K.S.A. 2016 Supp. 22-3210[a][2]) is applicable and favors the defendant. While the State points to the colloquy between the district court and Metzger as evidence that he understood his pleas, the fact that Metzger was not informed that his pleas would result in imposition of a controlling lifetime postrelease supervision term indicates that he could not have understood one important aspect of his pleas. Under the circumstances, without knowledge of the maximum sentence that may result from entering no contest pleas, we are not convinced Metzger fairly and knowingly entered his pleas. This factor weighs in favor of Metzger.

Our Supreme Court has underscored that the three factors identified in *Fritz* are not necessarily exclusive. *State v. Bricker*, 292 Kan. 239, Syl. ¶ 4, 252 P.3d 118 (2011). For example, our Supreme Court considered five additional factors in analyzing whether

14

the district court erred in denying the defendant's motion to withdraw his guilty pleas. These factors included: (1) the reasonable promptness of the defendant's motion to withdraw; (2) the defendant's failure to raise the issue in a prior appeal; (3) prejudice the State would suffer if forced to try the case after a lengthy period of time; (4) the defendant's prior involvement in the criminal justice system; and (5) receipt by the defendant of a favorable plea bargain. *State v. Moses*, 280 Kan. 939, 952-54, 127 P.3d 330 (2006).

A brief review of these *Moses* factors supports Metzger's argument. With regard to the first two factors, although Metzger entered his no contest pleas in 2011, he had no reason to challenge those pleas until the State filed its motion to correct illegal sentence about 4 years later, in 2015. Upon hearing that his previously imposed 36-month postrelease supervision term would be extended to life, Metzger promptly filed his motion to withdraw pleas. These two factors favor Metzger.

With regard to the third factor, the State does not inform us of any particular prejudice that will occur if Metzger's pleas are withdrawn and the State reinstitutes prosecution on the original charges filed against Metzger. As to the fourth factor, we note that prior to his sentencing Metzger had been convicted in criminal court of two nonperson misdemeanors and adjudicated in juvenile court of one nonperson felony and six nonperson misdemeanors. This criminal history reflects Metzger's prior experience with the judicial system, although we note that it does not include any convictions or adjudications for person crimes. We conclude that the third and fourth factors do not favor either party.

As to the fifth factor, it is apparent that Metzger received a favorable plea bargain for which he avoided the potential for significantly greater incarceration than he received from the plea bargain. Indeed, central to the district court's decision denying Metzger's motion was the favorable nature of the plea agreement:

15

"The Court does not think that there's been a manifest injustice. The plea agreement was made. The charges [against Metzger] were substantially reduced. The Court imposed the sentence that was called for in the plea agreement. In fact the Court even went one step further and made the two offenses concurrent rather than consecutive, which wasn't part of the plea agreement, so [Metzger] was given the benefit of that as opposed to consecutive sentences."

We agree with the district court that the plea agreement was beneficial to Metzger, and this factor mitigates against a finding of manifest injustice. Still, Metzger testified that, in his estimation, it was "crazy" that he was advised of a 36-month postrelease supervision term only to have it later increased to a lifetime period 4 years later. According to Metzger, "I mean, it's quite the ordeal." Regardless, Metzger makes a valid point that there is a significant difference between a 36-month postrelease supervision term and a lifetime postrelease supervision term.

Moreover, our review of Metzger's testimony at the hearing on his motion to withdraw plea persuades us that he has been fully informed of the potentially adverse consequences of withdrawing his pleas and that his decision is voluntary. In particular, we note the following colloquy between Metzger and his counsel:

"Q.     But you're aware if the Court allows you to withdraw your plea or if it denies it and you appeal it, and the Court of Appeals reverses it and everything, and you're charged with the original charges in both the cases and you get convicted of them you may have to serve more time?

"A.     I understand that.

"Q.     And you're going to get out in about a year aren't you?

"A.     I got like ten months now.

"Q.     I just want to make sure you know that?

"A.     Yeah, I know that.

"Q.     So you might get what you wish for, you know what I mean.

"A.     Be careful what you wish for, I understand."

16

We conclude that the failure of the district court to properly advise Metzger of the maximum penalty upon his no contest pleas was a violation of K.S.A. 2016 Supp. 22-3210(a)(2), and due process of law as interpreted by *Moody* and *Barahona.* Upon our application of the factors set forth in *Fritz* and *Moses* to the facts of this case, we are persuaded that the balance tips in favor of a finding of manifest injustice. Accordingly, with regard to K.S.A. 2016 Supp. 22-3210(d)(2), we hold the district court erred as a matter of law in its legal conclusion that Metzger had not shown manifest injustice to withdraw his pleas.

The district court's ruling is reversed and the case is remanded to allow Metzger to withdraw his pleas of guilty and for further proceedings.

Affirmed in part, reversed in part, and remanded.

17